**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN HANDEL D.M.D., P.C.,** | : : | |
| *Plaintiff,* | : : : | |
| v. | : : | **Case No. 2:20-cv-03198** |
| **ALLSTATE INSURANCE COMPANY,** | : : : | |
| *Defendant.* | : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALLSTATE INSURANCE
COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Douglas Y. Christian (PA Id. No. 41934)
Terrence M. Grugan (PA Id. No. 307211)
Brittany M. Wilson (PA Id. No. 313912)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215-665-8500
F: 215-864-8999

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant, Allstate Insurance
Company*

## TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 4

III. LEGAL STANDARD ....................................................................................... 8

IV. ARGUMENT ..................................................................................................... 9

    A.  THE FIRST AMENDED COMPLAINT FAILS TO MEET RULE 8'S PLEADING
        REQUIREMENTS. .......................................................................................... 9

    B.  THE FIRST AMENDED COMPLAINT OTHERWISE FAILS TO STATE A CLAIM
        UNDER THE PLAIN TERMS OF THE POLICY AND MUST BE DISMISSED
        PURSUANT TO RULE 12(B)(6). .................................................................... 11

        1.  The First Amended Complaint Fails to Assert *Facts* Establishing A
            "Direct Physical Loss." ...................................................................... 12

            a.  *The Business Income and Extra Expenses Coverages Do Not Apply
                Because Plaintiff Has Not Alleged a "Direct Physical Loss."* .......... 12

            b.  *The Civil Authority Coverage Does Not Apply Because Plaintiff Has
                Not Alleged Any Facts Related to That Coverage.* ........................... 18

        2.  The Virus Exclusion Applies. ............................................................ 21

            a.  *Plaintiff's Conclusory Allegations That the Virus Exclusion "Does Not
                Apply" Cannot Be Considered.* ........................................................ 22

            b.  *Regulatory Estoppel Does Not Bar Application of the Virus Exclusion.* .......... 24

            c.  *Public Policy Does Not Bar Application of the Virus Exclusion.* ...................... 29

    C.  PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND. ........................................ 29

V.  CONCLUSION ................................................................................................. 30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn. et al.*,
  20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ................................................1, 14

*Angstadt v. Midd-West Sch. Dist.*,
  377 F.3d 338 (3d Cir. 2004) ......................................................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... *passim*

*U.S. ex rel. Atkinson v. P.A. Shipbuilding Co.*,
  473 F.3d 506 (3d Cir. 2007) ....................................................................................................29

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... *passim*

*Bell v. Rothrock*,
  No. 18-CV-02177, 2020 WL 1288484 (M.D. Pa. Jan. 30, 2020) ...................................*passim*

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ....................................................................................................1

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*,
  89 F.3d 976 (3d Cir. 1996) ......................................................................................................25

*Ciser v. Nestle Waters N. Am. Inc.*,
  596 F. App'x 157 (3d Cir. 2015) ...............................................................................................9

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
  No. Civ. 98-434-HU, 1999 WL 619100 (D. Or. Aug. 4, 1999) ...............................................17

*Davis v. Family Court of Phila.*,
  No. CV 14-6840, 2015 WL 10937416 (E.D. Pa. Feb. 20, 2015) ...............................................9

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
  636 F.3d 683 (5th Cir. 2011) .............................................................................................18, 20

*Diesel Barbershop, LLC, et al. v. State Farm Lloyds*,
  No. 20-CV-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ...........................................14

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
  No. 20-258-CB .......................................................................................................1, 13, 22

*Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*,
  161 F. Supp. 3d 970 (D. Kan. 2016) .................................................................15

*Haines v. State Auto Prop. & Cas. Ins. Co.*,
  No. 08-CV-5715, 2010 WL 1257982 (E.D. Pa. Mar. 25, 2010), aff'd, 417 F.
  App'x 151 (3d Cir. 2011) ..................................................................................24

*Hussey Copper, Ltd. v. Arrowood Indem. Co.*,
  391 F. App'x 207 (3d Cir. 2010) ..................................................................25, 28

*Hussey Copper Ltd. v. Royal Ins. Co. of Am.*,
  No. 07-758, 2009 WL 2913959 (W.D. Pa. Sept. 9, 2009) ...............................25

*J.H. France Refractories Co. v. Allstate Ins. Co.*,
  578 A.2d 468 (Pa. Super. Ct. 1990) ................................................................24

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
  440 F. Supp. 3d 520 (D.S.C. 2020) ..................................................................19

*Malaube, LLC v. Greenwich Ins. Co.*,
  No. 20-CV-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ................14, 15

*Mama Jo's Inc. v. Sparta Ins. Co.*,
  No. 18-12887, --- F. Appx ---, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) ................13, 17

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
  884 N.E.2d 1130 (Ohio Ct. App. 2008) .............................................................17

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
  No. 20-cv-00401, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) .....................1, 22

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ..............................................................................1

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
  115 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010) .......................................................17

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  No. 20-CV-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ...................20

*Murphy v. Office of Disciplinary Counsel*,
  No. 19-3526, 2020 WL 3790535 (3d Cir. July 7, 2020) .................................4, 29

*N.E. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
  No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014) ..........15

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014) .................................................................16

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)................................14, 19, 20

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
385 F. Supp. 2d 280 (S.D.N.Y. 2005)..........................................................................3, 11, 12

*Plan Check Downtown III, LLC v. AmGuard Ins. Co. et al.*,
No. CV 20-6954 (C.D. Cal. Sept. 16, 2020), Civil................................................................15

*Port Auth. of N.Y & N.J. v. Affiliated FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002)...........................................................................................12, 28

*Reeves v. Travelers Companies*,
296 F. Supp. 3d 687 (E.D. Pa. 2017)....................................................................................23

*Reliance Ins. Co. v. Moessner*,
121 F.3d 895 (3d Cir. 1997)..................................................................................................24

*Rose's 1, LLC v. Erie Ins. Exch.*,
No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 06, 2020)............................14

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
751 N.Y.S.2d 4 (2002)...........................................................................................................16

*Sandy Point Dental, P.C. v. The Cincinnati Ins. Co.*,
No. 20-CV-2160 (N.D. Ill. Sept. 21, 2020) ....................................................................15, 19

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
530 F. Supp. 2d 706 (E.D. Pa. 2008) ..............................................................................25, 28

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
No. 3:09-cv-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ..........................................21

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
No. 20-cv-3311-VEC (S.D.N.Y.) ...........................................................................................13

*Source Food Tech, Inc. v. U.S. Fid. & Guar. Co.*,
465 F.3d 834 (8th Cir. 2006) ................................................................................................12

*Studio 417, Inc. v. The Cincinnati Ins. Co.*,
No. 20-CV-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) .......................................13

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
781 A.2d 1189 (2001)............................................................................................................25

*Syufy Enters. v. Home Ins. Co. of Ind.*,
No. 94-0756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ..................................................20

*Takeda Pharms. U.S.A., Inc. v. Spireas*,
    400 F. Supp. 3d 185 (E.D. Pa. 2019) ..............................................................................25, 28

*The Inns By the Sea v. California Mut. Ins. Co.*,
    Case No. 20-CV-001274 (Cal. Sup. Ct. Aug. 6, 2020), Order .................................................14

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ...........................................1, 14, 29

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
    439 F. 3d 128 (2d Cir. 2006)...........................................................................................11, 20

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
    475 F. App'x 569 (6th Cir. 2012) ..................................................................................13, 17

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
    7 Cal. Rptr. 3d 844 (2003) ..................................................................................................16

*White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*,
    No. 13-cv-8194, 2015 WL 1755372 (D. Ariz. Apr. 17, 2015) .........................................16, 18

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
    935 F.3d 187 (3d Cir. 2019)...............................................................................................29

**Other Authorities**

10 Couch on Insurance § 148:46 (3d ed.1998) ....................................................................12, 28

*Black's Law Dictionary* (10th ed. 2014)....................................................................................10

Federal Rules of Civil Procedure
    Rule 8 ..................................................................................................................... *passim*
    Rule 12(b)(6)........................................................................................................... *passim*

https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Cleaning-and-Disinfection...................17

## I.    INTRODUCTION

Plaintiff seeks coverage under a commercial insurance policy issued by Defendant Allstate Insurance Company ("Allstate") (Policy No. 648863981, the "Policy")[1], providing property insurance coverage for Plaintiff's business premises (the "Covered Property").  (First Am. Compl., ECF No. 14, ¶¶ 18, 21.)  Plaintiff alleges that Allstate improperly denied coverage for lost business income, extra expenses, and interruption by civil authority caused by the COVID-19 pandemic and related orders by government officials requiring the closure of "non-life sustaining" businesses as a precaution to prevent further spread of the disease.  (*See id.* ¶¶ 42, 105, 124).

The overwhelming majority of courts to address similar COVID-19 claims have found that they (1) *do not* arise from "direct physical loss of or damage to" property, *see, e.g., 10E, LLC v. Travelers Indem. Co. of Conn. et al.*, 20-cv-04418, 2020 WL 5359653, at *4-5 (C.D. Cal. Sept. 2, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.,* 20-11655, 2020 WL 5258484, at *5-6 (E.D. Mich. Sept. 3, 2020); *see also infra* pp. 13-15; (2) are barred by an unambiguous virus exclusion, *see, e.g., Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 20-cv-00401, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020); (3) or both, *see Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB, transcript of July 1, 2020 hearing (Ingham Cnty., MI Circuit

---

[1] A certified copy of the Policy is attached hereto as <u>Exhibit A ("Ex. A")</u>.  The Policy is also attached to the Plaintiff's First Amended Complaint as Exhibit 1 (ECF No. 14-1).  The page references cited herein refer to the Bates stamped page numbers found at the bottom right corner of <u>Ex. A</u>, attached hereto.  The Court may properly consider the attached Policy because, in addition to being an exhibit to the Complaint, "…a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (determining that consideration of certain school regulations not attached to the complaint is permissible because the claim challenged the reasonableness of those regulations); *see, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

Ct.), attached hereto as <u>Exhibit B</u> ("<u>Ex. B</u>"), at pp. 18-23. For the same reasons, Plaintiff's claims fail here.

As an initial matter, the First Amended Complaint does not meet the *Twombly/Iqbal* pleading standard because it does not allege facts sufficient to state a plausible claim for relief under Federal Rule of Civil Procedure Rule 8 ("Rule 8"). *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007). Plaintiff's Policy requires, among other things, "direct **physical** loss" to Plaintiff's Covered Property as a prerequisite to Business Income and Extra Expense coverages. (See Ex. A at DEF_00000064 (emphasis added).) Similarly, a prerequisite to Civil Authority coverage is the issuance of civil authority orders barring access to Plaintiff's premises in response to "direct physical loss or damage" to properties other than the Covered Property. Although Plaintiff's First Amended Complaint sets forth much about the COVID-19 pandemic and resulting emergency orders, it is devoid of any facts establishing any actual physical loss or damage to any business premises anywhere, and it contains no allegations that any insured property required repair or replacement of any kind. All that appears are conclusory non-sequiturs asserting that issuance of gubernatorial orders temporarily closing businesses in some unexplained way constitutes "direct physical loss or damage." (First Am. Compl. ¶¶ 44, 49-57, 67, 78, 101.) Those bald recitals are unsupported by any allegation of fact and are thus not sufficient to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible." The First Amended Complaint must therefore be dismissed. *See Twombly,* 550 U.S. at 570; Fed. R. Civ. P. 8.

The Complaint also fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for at least three other reasons. First, Plaintiff's claim fails because the losses it alleges are not covered by the Policy. The Business Income and Extra Expense coverages both

require that the insured establish "direct physical loss" to the Covered Properties.  To establish direct physical loss or damage under applicable law, Plaintiff must show that the property suffered demonstrable, physical alteration.  *See, e.g., Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 286-89 (S.D.N.Y. 2005) (under Pennsylvania law, court found financial losses unrelated to physical loss or physical damage at the insured premises did not satisfy the policy's direct physical loss requirement because "the claimed loss must be physical in nature").  The First Amended Complaint, however, fails to set forth any facts demonstrating that Plaintiff's business premises suffered any physical alteration, impairment, or damage.  To the contrary, Plaintiff alleges that its loss was caused by government-issued orders that prohibited the business from operating, but did not change or alter the physical structure of their premises in any way.  (First Am. Compl. ¶ 42.) Although the First Amended Complaint repeatedly parrots the phrase "direct physical loss," it does not specify any non-conclusory physical loss or damage to the Covered Property.

Similarly, Civil Authority Coverage requires that access to Plaintiff's premises be prohibited by civil authorities in response to dangerous physical conditions as a result of "direct physical loss of or damage to" other properties outside Plaintiff's Covered Property.  (*See* Ex. A at DEF_00000082.)  The First Amended Complaint contains no allegations establishing "direct physical loss of or damage to" any other structures.  Moreover, the governmental orders closing businesses to the public generally were in response to the pandemic and the health of residents and visitors and to control further spread of the disease, not in response to any physical damage to property.  (First Am. Compl. ¶ 59.)  So, Plaintiff's claims fail as a matter of law.

Finally, even if Plaintiff had stated a claim for coverage--and it has not--Plaintiff's claims would be barred by the Policy's clear, unambiguous, and specific exclusion for any loss or damage caused "directly or indirectly" by "any virus, bacterium or other microorganism that induces or is

capable of inducing physical distress, illness or disease" (the "Virus Exclusion").  (See Ex. A at DEF_00000090, DEF_00000093.)   Plaintiff unquestionably claims "damage caused by or resulting from" a "virus" that induces "physical distress, illness or disease," and therefore falls squarely within the Virus Exclusion.  *Id.*  Further, although Plaintiff contends that Allstate should be estopped from enforcing the Virus Exclusion based on representations made to state regulators during the regulatory approval process, those representations were entirely consistent with Allstate's position here.  Thus, regulatory estoppel does not apply.

In sum, the allegations of the First Amended Complaint simply do not establish a plausible basis for relief in the face of the clear and unambiguous provisions of the Policy.  Accordingly, the Complaint fails to state a claim and should be dismissed in its entirety.  Moreover, Plaintiff should not be permitted to amend his complaint again, having failed to add any allegations in the First Amended Complaint that would state a claim.  Plaintiff's failed attempt to save his claims through amendment highlights the futility of any subsequent amendment.  *See Murphy v. Office of Disciplinary Counsel*, No. 19-3526, 2020 WL 3790535, at *3 (3d Cir. July 7, 2020) (court may refuse leave to amend where amendment would be futile).

## II.    FACTUAL BACKGROUND

Plaintiff operates a dental office.  (First Am. Compl. ¶10.)  On June 30, 2020, Plaintiff filed this lawsuit, asserting claims for declaratory judgment and breach of contract.  (*Id.* ¶¶ 108-126.) Plaintiff seeks coverage under the Policy, which provides property coverage for Plaintiff's business premises.  As part of that coverage, the Policy covers certain lost business income ("Business Income Coverage") if Plaintiff's business operations are suspended as a result of "direct physical loss" to the Covered Property.  (*See* Ex. A at DEF_00000064.)  Specifically, it provides

Business Income Coverage for lost net income incurred during the "Period of Restoration"[2] caused by "**direct physical loss of or damage** to property at the described premises**.**" (*Id.* (emphasis added).)  The Policy reiterates that "**the loss or damage must be caused by or result from a Covered Cause of Loss.**"  (*Id*. (emphasis added).)  "Covered Causes of Loss" means "direct **physical loss**" unless otherwise excluded or limited under the Policy.  (*Id.* at DEF_00000075 (emphasis added).)

Similarly, the Policy provides coverage for "Extra Expenses" incurred during the "Period of Restoration" that Plaintiff "would not have incurred if there had been no **direct physical loss or damage to property** at the described premises.  The loss or damage must be caused by or result from a **Covered Cause of Loss**." (Ex. A at DEF_00000064 (emphasis added) ("Extra Expense Coverage").)

Plaintiff also relies extensively on a portion of the Policy that provides additional coverage related to the action of a civil authority ("Civil Authority Coverage") (*see* First Am. Compl. ¶¶ 22, 42, 66, 78).  That language provides coverage:

> for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that **prohibits** access to the described premises **provided that both of the following apply:** (1) Access to the area immediately surrounding the damaged property is **prohibited** by civil authority as a result of the damage, and the described premises are within that area but are **not more than one mile from the damaged property**; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to

---

[2] "Period of Restoration" is defined in the Policy as the period of time that "(1) Begins: (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and (2) Ends on the earlier of: (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) The date when business is resumed at a new permanent location." (Ex. A at DEF_00000106-07.)

enable a civil authority to have unimpeded access to the damaged
property.

(Ex. A at DEF_00000082 (emphasis added).)  Again, "Covered Causes of Loss" means "direct physical loss." (*Id.* at DEF_00000075.)

Thus, both the Business Expense Coverage and Extra Expense Coverage require Plaintiff to establish "direct physical loss of or damage to" to its Covered Property.  Similarly, the Civil Authority Coverage requires Plaintiff to establish that a civil authority "prohibited" access to the Covered Property in response to direct physical loss of or damage to property within one mile of the Covered Property. (*Id.* at DEF_00000082.)  So, in all cases, direct *physical* loss of or damage to property is a prerequisite to coverage.

All of the above coverages are also subject to a Virus Exclusion that unambiguously excludes coverage for any "loss or damage caused directly or indirectly by…any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. A at DEF_00000090-93.)  The Virus Exclusion is conspicuously located in the portion of the "Businessowners Coverage Form" that describes Property coverage. (*Id.* at DEF_00000074, DEF_00000090-93.)

Against that backdrop, Plaintiff alleges that COVID-19 has spread throughout the country and has been declared a Public Health Emergency by the Governor of Pennsylvania, Tom Wolf. (First Am. Compl. ¶¶ 59-64.)  The First Amended Complaint alleges that on March 19, 2020, Governor Wolf ordered all non-life sustaining businesses to close in an effort to limit the spread of COVID-19.  (First Am. Compl. ¶ 61, Ex. 4).  Governor Wolf's Order, however, permitted dentist offices like Plaintiff's to remain open (though it prohibited those businesses from

performing elective procedures).  (*See* List of Life Sustaining Businesses, a copy of which is attached hereto as Exhibit C ("Ex. C") at p. 5).[3]

Plaintiff further alleges that on March 23, 2020, Governor Wolf issued a Stay-at-Home Order.  (First Am. Compl. ¶ 62, Ex. 5.)  This Order, however, specifically excepted individuals leaving their homes "to access, support, or provide life sustaining business, emergency, or government services."  (First Am. Compl. Ex. 5.)

Finally, Plaintiff alleges that on March 26, 2020, the Pennsylvania Department of Health issued its Guidance directing facilities to limit dental treatment to urgent and emergency procedures in the absence of negative pressure rooms and N95 masks.  (First Am. Compl. ¶ 63, Ex. 6.)  The Health Department's Guidance thus specifically provided that access to dentists' offices was limited, but not prohibited.[4]

Effective June 5, 2020, Governor Wolf suspended his March 19 and March 23 as to Delaware County, where Plaintiff is located.  (*See* May 7, 2020 Order for Limited Opening of Business, Lifting of Stay at Home Requirements and June 4, 2020 Amendment to said Order, copies of which are attached hereto as Exhibits D ("Ex. D") and E ("Ex. E"), respectively).

Plaintiff alleges that Allstate denied its claim on May 28, 2020.  (First Am. Compl. ¶ 105).  It then filed this lawsuit seeking a declaratory judgment that: (a) government-issued closure orders

---

[3] Plaintiff describes itself as a "non-life sustaining business" (*see* First Am. Compl. ¶ 94).  That bald allegation, however, is contradicted by the order upon which it relies.  (*See* Ex. C at p. 5).  Thus, the Court need not credit Plaintiff's allegation for purposes of this Motion.  *See Bell v. Rothrock*, No. 18-CV-02177, 2020 WL 1288484, at *3 (M.D. Pa. Jan. 30, 2020), report and recommendation adopted, No. 18-CV-02177, 2020 WL 1244595 (M.D. Pa. Mar. 16, 2020) ("Nor is [the Court] required to credit factual allegations contradicted by indisputably authentic documents on which the [FAC] relies.").

[4] Plaintiff alleges that it closed its business on March 13, 2020, almost two weeks ***before*** Governor Wolf issued his March 26, 2020 limiting the services Plaintiff could provide at the Covered Property (but not prohibiting access to the Covered Property entirely).  Thus, accepting the allegations in the Complaint as true, neither Governor Wolf's orders nor the Health Department's Guidance caused Plaintiff's business to close.  (First Am. Compl. ¶¶ 6, 94.)

prohibited access to Plaintiff's Covered Property; (b) government-issued closure "prohibit access" as defined in the Policy; (c) the Civil Authority Coverage applies to Plaintiff due to physical loss or damage at the Covered Property or other premises in the immediate area of the Covered Property; (d) Plaintiff is entitled to coverage for business income loss; (e) Plaintiff sustained direct physical loss of or damage to the Covered Property under the Policy; (f) the Virus Exclusion is void as against public policy as it pertains to the closure Orders described herein; (g) the Virus Exclusion does not apply to business income loss or losses from an Order of a civil authority; (h) Defendant is estopped from enforcing the Virus Exclusion; (i) the inability to use the Covered Property amounts to a physical loss or damage as defined in the Policy; and (j) Defendant's denial of coverage for losses caused by the referenced civil authority orders violates public policy.  (First Am. Compl. ¶¶ 108-115, Prayer for Relief, (a-j).)  Plaintiff similarly alleges a claim for breach of contract based on Defendant's denial of coverage for losses caused by the referenced civil authority orders.  (*Id*. ¶¶ 116-126, Prayer for Relief (k).)

## III.   LEGAL STANDARD

Rule 8 requires that a Complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Failure to plead sufficient facts to state a claim for relief that is "plausible on its face" warrants dismissal.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  It is a plaintiff's burden to show its "entitlement to relief" with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

Although a Rule 12(b)(6) motion to dismiss accepts the First Amended Complaint's well-pleaded factual allegations as true for purposes of the motion, the Court is not required to accept mere conclusions or "bare assertions … amounting to nothing more than a 'formulaic recitation' of the elements" of a claim. *Iqbal*, 556 U.S. at 698, citing *Twombly*, 550 U.S. at 555. "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556

U.S. at 678 (internal quotations and citation omitted). Conclusory allegations are not entitled to

the assumption of truth and must be disregarded. *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x

157, 163 (3d Cir. 2015); *Davis v. Family Court of Phila.*, No. CV 14-6840, 2015 WL 10937416,

at *1, n.1 (E.D. Pa. Feb. 20, 2015).

Applying those standards here, the First Amended Complaint must be dismissed for failure

to state a claim.

## IV.   ARGUMENT

### A.   The First Amended Complaint Fails To Meet Rule 8's Pleading Requirements.

Plaintiff seeks coverage under a Policy that requires a direct physical loss or damage to

property but it pleads no specific facts describing any physical change, alteration, or damage to

any property. Instead, the Complaint, even as amended, just repeatedly recites the phrase "direct

physical loss" without explaining what that loss is or how either the pandemic or the Pennsylvania

governmental emergency orders that resulted physically altered or damaged the Covered Property.

(First Am. Compl. ¶ 44 (making conclusory statement that "COVID-19 is a cause of real physical

loss and damage"); *id*. ¶¶ 45-47, 50-52 (suggesting that the mere ability of the COVID-19 virus to

exist on physical surfaces, though not alleged to be found at the Covered Property, constitutes a

direct physical loss); *id.* ¶ 101 (similarly suggesting that because Plaintiff's business is highly

susceptible to transmission of COVID-19 that "the virus is physically impacting the Covered

Property"); *id.* ¶¶ 53-54 (alleging that "loss of use" and "restriction of use"  "of the Covered

Property also constitutes direct physical loss" without explaining what physical damage caused

the loss or restriction of use); *id.* ¶ 55 (claiming that a non-defined "COVID-19 Effect" "produces

physical loss of and damage to the property"); *id.* ¶¶ 56-57 (suggesting, without support, that

"social anxiety over public health and society's change in perception that indoor establishments are unsafe" creates a physical loss or damage or is the "functional equivalent of damage of a material nature"); *id.* at ¶ 67 (asserting, without any explanation, that "the Governor's Order, in and of itself, constitutes a Covered Cause of Loss within the meaning of the Policy).)  These threadbare conclusions are insufficient to state a claim.  *See Twombly*, 550 U.S. at 555 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 698, citing *Twombly*, 550 U.S. at 555 ("bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand Rule 12(b)(6) motion to dismiss).[5]  Plaintiff alleges no facts establishing any "direct physical loss of or damage to" the Covered Property, nor does Plaintiff claim that any insured property required repair, rebuilding, or replacement of any kind. (Ex. A at DEF_00000106-07.)

The *only* actual facts[6] set forth in the First Amended Complaint indicate that Plaintiff was forced to suspend operations as a result of the pandemic and a governmental-issued closure order. (First Am. Compl. ¶¶ 6, 67, 94, 102.)  Those allegations, however, do not plausibly describe "direct physical loss of or damage" to property, nor do they explain how the mere existence of a viral

---

[5] Indeed, although the First Amended Complaint repeats the phrase "direct physical loss," and asserts that COVID-19 *can potentially* cause damage, Plaintiff appears to contend that its loss was not caused by COVID-19 at all, but merely a legal/regulatory change that forced them to alter their business operations.  (*See* First Am. Compl. ¶ 67 (contending that "Plaintiff's Covered Property suffered 'direct physical loss or damage' due to the Governor of Pennsylvania's Order (and other local governmental orders) mandating that Plaintiff discontinue its primary use of the Covered Property").)  The Policy does not cover losses caused by changing laws, ordinances, or regulations governing Plaintiff's business.  Plaintiff's inability to identify the cause of their alleged loss, much less describe the nature of any "direct physical loss" highlights their failure to meet the requirements of Rule 8.

[6] A fact is "[s]omething that actually exists" or "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation."  *Black's Law Dictionary* (10th ed. 2014).

pandemic can cause a physical alteration of or physical impairment to Plaintiff's property, as opposed to mere economic impact.  Accordingly, the First Amended Complaint sets forth no facts establishing "direct physical loss of or damage" to the property necessary to trigger Business Income, Extra Expenses, or Civil Authority Coverages.

Similarly, Plaintiff pleads no facts establishing either: 1) that the government-issued orders cited in the First Amended Complaint were in response to any physical loss of or damage to property within one mile of the Covered Property; or 2) that access to the Covered Property was prohibited by those orders.  Both elements are prerequisites to Civil Authority Coverage.  (*See* Ex. A. at DEF_00000082.)  *See Phila. Parking Auth.*, 385 F. Supp. 2d at 286-89 (airport parking company's financial losses arising from government-issued orders grounding all flights after 9/11 did not satisfy insurance policy's direct physical loss requirement because the "claimed loss must be physical in nature"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F. 3d 128, 134-35 (2d Cir. 2006) (civil authority coverage not available for airport closure ordered after September 2011 terrorist attacks even though nearby Pentagon was damaged, since "the government's … decision to halt operations at the Airport … was based on fears of future attacks" and not upon "damage to adjacent premises").  Thus, Plaintiff pleads no facts that would establish a plausible claim for relief under the Policy as required under Rule 8.  *Twombly* and *Iqbal* therefore control, and the First Amended Complaint must be dismissed.  Moreover, Plaintiff's failure to cure these deficiencies in his Amended Complaint make clear that any further amendment would be futile.

**B.    The First Amended Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy and Must Be Dismissed Pursuant To Rule 12(b)(6).**

Quite apart from the First Amended Complaint's Rule 8 deficiencies, the Complaint otherwise fails to state a claim on which relief can be granted and must be dismissed under Rule 12(b)(6).

1. **The First Amended Complaint Fails to Assert *Facts* Establishing A "Direct Physical Loss."**

   a. **The Business Income and Extra Expenses Coverages Do Not Apply Because Plaintiff Has Not Alleged a "Direct Physical Loss."**

The First Amended Complaint fails as a matter of law because Plaintiff has not pleaded facts showing "direct physical loss of or damage" to the Covered Property.  "Direct physical loss of or damage" is prerequisite to Business Income or Extra Expense coverage under the Policy. *See supra*, 5.

To establish physical loss or damage to property, Plaintiff must show actual physical alteration to the structure or that the business was "physically dysfunctional" in a way that required repair. *See Phila. Parking Auth.*, 385 F. Supp. 2d at 286-89 (court found financial losses unrelated to physical loss or physical damage at the insured premises did not satisfy the policy's direct physical loss requirement because "the claimed loss… must be physical in nature"); *see also Port Auth. of N.Y & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage"); *Source Food Tech, Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (finding that closing of border due to mad cow disease and resulting inability to transport beef across the border did not constitute direct physical loss to property as such interpretation would render the word "physical" meaningless); 10 Couch on Insurance § 148:46 (3d ed.1998) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

More recently, the Eleventh Circuit interpreted almost identical language in *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, --- F. Appx ---, 2020 WL 4782369 (11th Cir. Aug. 18, 2020). There, the insured's property was contaminated by dust and debris generated by nearby construction.  The insured thus sought coverage under an insurance policy requiring it to show "direct physical loss of or damage to Covered Property."  *Id.* at 1.  The Eleventh Circuit, however, held that the insured's loss was not a "direct physical loss of or damage to" property.  The court reasoned that the "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"  *Id.* at 8.  That reasoning is consistent with other circuit courts as well.  *See, e.g., Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573-74 (6th Cir. 2012) (finding that contamination could be cleaned and thus did not constitute *physical* damage).

Consistent with the widely-held definition recently applied in *Mama Jo's*, the vast majority of courts to analyze the issue have required a physical change to property to trigger coverage arising from the COVID-19 pandemic.[7]  *See Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 20-cv-3311-VEC, (S.D.N.Y.), transcript of May 14, 2020 hearing, attached hereto as Exhibit F ("Ex. F"),   at p. 15 (finding plaintiff had no likelihood of success on merits of business interruption claim related to COVID-19 where plaintiff had not shown damage to property that caused loss); *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB, transcript of July 1, 2020 hearing (Ingham Cnty., MI Circuit Ct.), Ex. C, at pp. 18-23 (granting summary disposition of business interruption claim, without opportunity for leave to amend, arising from COVID-19

---

[7] Even *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-CV-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), an outlier case that declined to dismiss the insured's COVID-19 claim on a Rule 12(b)(6) motion, highlights the *physical* loss or damage requirement.  In *Studio 417*, the claim survived a motion to dismiss only because the insured had alleged that COVID-19 had physically "attached to and deprived [p]laintiffs of their property."  *Id.*, at *4.  Here, by contrast, Plaintiff does not allege that COVID-19 attached to its insured property, much less that the presence of COVID-19 inside the property was the cause of Plaintiff's business interruption losses.

pandemic and finding "direct physical loss" "has to be something with material existence. . . . that alters the physical integrity of the property."); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *4 (D.C. Super. Aug. 06, 2020) (granting defendant's early motion for summary judgment because plaintiffs could not show a "direct physical loss" caused by COVID-19); *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, No. 20-CV-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (in dismissing plaintiffs' complaint court reasoned that "the line of cases requiring tangible injury to property are more persuasive" and on point for the facts relating to COVID-19 losses); *The Inns By the Sea v. California Mut. Ins. Co.*, Case No. 20-CV-001274 (Cal. Sup. Ct. Aug. 6, 2020), Order granting Defendant's Demurrer and Defendant's Demurrer and Memorandum of Points and Authorities, attached hereto as Exhibit G ("Ex. G"), at 3 (dismissing complaint where county closure orders were not issued in response to direct physical damage to property, but merely to ensure safety of citizens and mitigate against future loss); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-CV-22615, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (finding that "direct physical loss or damage" was not ambiguous and required physical change to property; and government-issued orders making restaurant "substantially unusable" did not constitute direct physical loss or damage triggering coverage); *10E, LLC*, 2020 WL 5359653, at *4-5 (dismissing complaint finding that neither limitation on in-person dining and according loss of use of property nor detrimental economic impact constitute direct physical loss); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc*., No. 20-CV-907, 2020 WL 5500221, at *6 (S.D. Cal. Sept. 11, 2020) (dismissing the complaint in part based on the rationale set forth in *10E, LLC*); *Turek Enter., Inc. v. State Farm Mut. Auto. Ins. Co., State Farm Fire and Cas. Co.*, 20-11655, 2020 WL 5258484, *5-8 (E.D. Mich. Sept. 3, 2020) (dismissing plaintiff's claims on grounds that "direct physical loss" requires "some tangible damage to Covered Property" and that inability to

14

use the Covered Property due to civil authority orders issued in response to COVID-19 did not constitute such a loss); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am*., No. 20-CV-03213, 2020 WL 5525171, at \*5 (N.D. Cal. Sept. 14, 2020) (dismissing complaint because Business Income and Extra Expense coverage did not extend to losses caused by inability to occupy storefront; and because there were no allegations of a physical force which "induced a detrimental change in the property's capabilities," there was no "direct physical loss of property" under the policy) (relying on *Gavrilides*, Ex. C); *Plan Check Downtown III, LLC v. AmGuard Ins. Co. et al.*, No. CV 20-6954 (C.D. Cal. Sept. 16, 2020), Civil Minutes General, Tentative Ruling on Defendant's Motion to Dismiss attached hereto as Exhibit H (Ex. H"),[8] at pp. 4-9 of Order (dismissing claims because complaint did not allege facts to show a tangible alteration and thus no "direct physical loss of or damage to property"); *Sandy Point Dental, P.C. v. The Cincinnati Ins. Co.*, No. 20-CV-2160 (N.D. Ill. Sept. 21, 2020), Memorandum Opinion & Order attached hereto as Exhibit I (Ex. "H"), at pp. 3-5 (dismissing claims, finding that "direct physical loss" "unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage" which could not be shown as a "result of either inability to access its own office or the presence of the virus on its physical surfaces").[9]

---

[8] The *Plan Check* court issued a Tentative Ruling on Defendant's Motion to Dismiss and then held a telephonic hearing. *See* Ex. H. Subsequently, the plaintiff submitted a status report, accepting the dismissal of the action with prejudice. *See id.*

[9] Plaintiff suggests that the definitions of "loss" and "damage" are not limited to only direct or physical loss or damage. (First Am. Compl. ¶ 41). But the Policy does not cover *any* "loss" or "damage." To the contrary, the Policy only covers loss "caused by a *direct physical* loss of or damage to property." (*See* Ex. A at DEF_00000064 (emphasis added).) And, contrary to Plaintiff's arguments, this phrase is not ambiguous, and has been consistently interpreted by courts throughout the country. *See Malaube*, 2020 WL 5051581, at \*2-8 (finding "direct physical loss or damage" is unambiguous and applying definition to facts of COVID-19 claim); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978-79 & n.44 (D. Kan. 2016) (applying Kansas law) (the phrase "physical loss or damage "unambiguously" requires "physical alteration" of property); *N.E. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, at \*6 (N.D. Ga. May 23, 2014) (applying Georgia law) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not

As discussed above, however, the First Amended Complaint is devoid of any well pleaded facts establishing any physical loss or damage to the Covered Property.  Plaintiff does not even allege that the COVID-19 virus, or anyone carrying the virus, was ever present at the Covered Property.  Nor does Plaintiff claim that any property required repair or replacement.  Where there is no direct physical loss, there is no coverage.  *See*, *e.g.*, *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co*., 7 Cal. Rptr. 3d 844, 850 and n.5 (Cal. Ct. App. 2003) (database crash did not constitute direct physical loss; therefore, it was "unnecessary to analyze the various exclusions and their application to this case"); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 333 (S.D.N.Y. 2014) (power outage that caused law firm to close was not direct physical loss; thus, it was unnecessary to decide whether a flood exclusion applied), citing *Roundabout Theatre Co. v. Cont'l Cas. Co*., 751 N.Y.S.2d 4, 10 (N.Y. App. Div. 2002).

To the extent Plaintiff contends that there is a *risk* of damage or contamination, (*see* First Am. Compl. ¶¶ 65, 95-100), mere risk does not constitute physical loss or damage.  *See*, *e.g.*, *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*, No. 13-cv-8194, 2015 WL 1755372, at *2-3 (D. Ariz. Apr. 17, 2015) (finding loss was not caused by "direct physical damage" despite *threat* of forest fire, where loss was caused by government closure orders, not fire or smoke damage to property); *Newman Myers Kreines Gross Harris, P.C.*, 17 F. Supp. 3d at 331 (phrase "direct physical loss or damage" did not include closure of insured law firm after utility company preemptively shut off power to lower Manhattan in advance of Superstorm Sandy); *Roundabout Theatre Co.*, 751 N.Y.S.2d at 8 (phrase "direct physical loss or damage to [insured's] property" did not include loss of use when insured's theatre became inaccessible because city closed nearby street after nearby structure collapsed).

---

been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy.").

Moreover, even if COVID-19 had been detected at Plaintiff's premises, that would not render it unusable, unsuitable, or unsafe – much less have caused "physical damage" to the property. At most, Plaintiff's premises would have required cleaning or sanitizing – a purely economic loss that the courts have recognized is ***not*** "physical loss of or damage to property."[10] *See Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x at 573-74 (economic losses from cleaning and remediation expenses sustained due to contamination of mold and bacteria did not constitute physical damage because the building itself was not physically damaged);[11] *Mama Jo's, Inc.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (***cleaning*** is not considered direct physical loss); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144 (Ohio Ct. App. 2008) (mold on exterior siding of house was not "physical damage" because it could be removed by ***cleaning*** with bleach).

For all these reasons, the First Amended Complaint lacks well pleaded facts establishing any physical loss of or damage to Plaintiff's properties. Beyond Plaintiff's "threadbare assertions" of "physical loss of or damage to" property, the First Amended Complaint provides no description

---

[10] Plaintiff claims that the COVID-19 virus can remain on surfaces for up to twenty-eight (28) days. (First Am. Compl. ¶ 47.) No source is given for this allegation. However, the Centers for Disease Control and Prevention (CDC) has expressly stated that prolonged business shutdowns should ***not*** be a necessary result of Coronavirus at a given premises. Rather, simple cleaning and disinfecting is recommended. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Cleaning-and-Disinfection (last visited on Sept. 18, 2020). In either event, Plaintiff's allegation that the COVID-19 virus can theoretically survive on surfaces of objects or materials does not establish that it did so, that the virus was ever present at the Covered Property, or that the virus caused any physical loss or damage to the Covered Property.

[11] Courts in various jurisdictions have interpreted this language similarly. *See, e.g.*, *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably damaged property); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 115 Cal. Rptr. 3d 27, 37-38 (Cal. Ct. App. 2010) ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") (internal quotations omitted).

or details of the claimed "physical loss."  Nor does it explain how the virus in any way caused a "demonstrable, physical alteration" at Plaintiff's property.  *See Twombly*, 550 U.S. at 555 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 698, 12 ("bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements'" of a claim do not withstand Rule 12(b)(6) motion to dismiss (citing *Twombly*, 550 U.S. at 555)).  Accordingly, even taking the well pleaded facts of the First Amended Complaint as true, Plaintiff fails to state a claim for coverage under the Business Income Coverage or Extra Expenses Coverage.

> **b.    The Civil Authority Coverage Does Not Apply Because Plaintiff Has Not Alleged Any Facts Related to That Coverage.**

Mirroring similar requirements found in the Business Income and Extra Expense Coverage, the Civil Authority Coverage provision provides coverage "for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises" if, *and only if*, the civil authority acts in response to a direct physical loss within one mile of the Covered Property.  (Ex. A at DEF_00000082 (emphasis added).)

Accordingly, to establish coverage, Plaintiff must show actual physical alteration of property located with one mile of the Covered Property which caused a civil authority to issue an order prohibiting access to the Covered Property.  *See White Mountain Communities*, 2015 WL 1755372, at *2 ("Coverage provision does not cover all income losses caused by the fire; rather, it covers only those income losses resulting from actual physical damage to the facility caused by fire."); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (interpreting an almost identical coverage provision and holding that "the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and [] the loss or damage to property other than the described

premises must be caused by or result from a covered cause of loss as set forth in the policy."); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520, 530-31 (D.S.C. 2020) (When the focus of the executive order is on the potential, future, or predicted impacts on life and property then the order was not issued because of direct physical loss or damage to property).

Here, Plaintiff has not alleged any damage to property other than Plaintiff's, much less property within one mile of the Covered Property.[12]  (*See* <u>Ex. A</u> at DEF_00000082 (to establish Civil Authority Coverage, Plaintiff must show that access to property "is prohibited by civil authority as a result of the damage [caused by a direct physical loss], and the described premises are within that area but are not more than one mile from the damaged property.").  For that reason alone, Plaintiff's claim fails.  *See Pappy's Barber Shops*, 2020 WL 5500221, at *6 (finding no coverage under the civil authority provision of the insured's policy where the complaint alleged that COVID-19 civil authority orders prohibited operating plaintiff's business at the premises but not access to the premises); *see also Sandy Point Dental*, Ex. I at 5-6 (concluding that civil authority coverage did not apply because "the complaint ha[d] not (and likely could not) allege that the coronavirus caused direct physical loss to other property"; also noting that plaintiff had failed to allege that access to its premises was prohibited by government order because dental offices were deemed essential businesses for emergency and non-elective work).

---

[12]  Plaintiff alleges that "to the extent that the governmental orders, in and of themselves, constitute…preclusion of access to the Covered Property because of a Civil Authority order related to damage to nearby properties, the Virus Exclusion simply does not apply" (First Am. Compl. ¶ 78), but such allegation constitutes a legal conclusion and does not actually contend that there was damage to nearby properties.  Moreover, said allegation is the quintessential "conclusory allegation" of which *Twombly* and *Iqbal* warned.  The allegation need ***not*** be accepted by the Court, particularly where it is contradicted by the plain text of the government order at issue.  *See* First Am. Compl. Ex. 4; <u>Ex. D</u>.

Further, Plaintiff has not alleged facts showing that the orders upon which it relies were issued *in response to* direct physical loss of or damage to any specific property.  (*See* Ex. A at DEF_00000082 (civil authority order must be issued "as a result of" damage to property).)  To the contrary, the First Amended Complaint alleges that the government orders were issued "to protect the public from the global pandemic caused by COVID-19."  (First Am. Compl. ¶ 6.)

In the absence of a direct nexus between a civil authority "shut down" order and actual physical damage to property, courts have found that no coverage exists.  *See, e.g.*, *See Pappy's Barber Shops*, 2020 WL 5500221, at *6 (civil authority coverage unavailable because the COVID-19 civil authority orders were not issued in response to direct physical loss or damage to property other than at the plaintiff's premises); *Mudpie*, 2020 WL 5525171, at *6-7 (finding that because civil authority orders were issued to prevent the spread of COVID-19 (and there were no allegations of damage to adjacent property), the complaint did not establish the causal link between prior property damage and the governments' closure order);  *United Air Lines*, 439 F. 3d at 134-35 (civil authority coverage not available for airport closure ordered after September 2011 terrorist attacks even though nearby Pentagon was damaged, since "the government's … decision to halt operations at the Airport … was based on fears of future attacks" and not upon "damage to adjacent premises"); *Dickie Brennan & Co., Inc.*, 636 F.3d at 685-86 (civil authority coverage not available to restaurateur when Mayor of New Orleans issued mandatory evacuation order in response to approaching hurricane; even though hurricane damaged other property in the Caribbean, evacuation order issued because of "possible future storm surge, high winds, and flooding" and not because of "physical damage to property, either distant property in the Caribbean or property in Louisiana"); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (civil authority coverage not available to theatre owners where theatre access

20

was limited due to dawn-to-dusk curfews in response to rioting following the Rodney King verdict; curfews were imposed to prevent potential looting and rioting and not because of damage to adjacent property).  For this independent reason, no Civil Authority Coverage exists.

Finally, Plaintiff has not alleged facts showing that the civil authority orders *prohibited* access to the Covered Property.  (*See* Ex. A at DEF_00000082 (orders must prohibit access to Plaintiff's property to trigger coverage).)  To the contrary, the plain language of those orders indicates that access to Plaintiff's dentist office *was not* prohibited.  Indeed, under Governor Wolf's Order and the Pennsylvania Health Department's Guidance, Plaintiff was authorized to continue to performing medical procedures *on the Covered Property*.  (*See* First Am. Compl. Ex. 4; Ex. C at p. 5 (listing dentist offices as life-sustaining business that may remain open for all non-elective procedures); First Am. Compl. Ex. 6 (March 26, 2020 Guidance issued by Pennsylvania Department of Health directing dental facilities to limit treatment to urgent and emergency procedures--and thus specifically allowing access to the Covered Property to perform those procedures).); *see also Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-02391, 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010) (finding that bridge repair hindered majority of customers from visiting ski resort, but did not constitute prohibition of access to the premises).

Thus, access to the Covered Property was not prohibited, as required to trigger Civil Authority Coverage.  Plaintiff's allegations to the contrary cannot contradict the plain terms of the orders.  *See Bell*, 2020 WL 1288484, at *3 (court may consider documents upon which plaintiff's claim relies and is not "required to credit factual allegations contradicted by indisputably authentic documents on which the [FAC] relies.").  For all these reasons, the Civil Authority Coverage does not apply.

**2.    The Virus Exclusion Applies.**

Even if Plaintiff had pleaded facts establishing direct physical loss of or damage to property, its claim would still be barred.  The Policy contains a clear and unequivocal Virus Exclusion excluding any "loss or damage caused directly or indirectly by… any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. A at DEF_00000090, DEF_00000093.)  To the extent Plaintiff has alleged any facts regarding its alleged losses, those losses clearly result from a "virus . . . that induces or is capable of inducing physical distress, illness or disease."  (*Id.* at DEF_00000093.)[13]  Thus, on its face, the Virus Exclusion bars Plaintiff's claims for declaratory judgment and breach of contract.  *See Gavrilides Mgmt. Co.*, Ex. B, at pp. 20-23 (finding virus exclusion was not vague and barred COVID-19 claim arising from government closure orders as a matter of law); *Mauricio Martinez,* 2020 WL 5240218, at *2 (finding that "Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion.").

### a.   Plaintiff's Conclusory Allegations That the Virus Exclusion "Does Not Apply" Cannot Be Considered.

Notwithstanding the clear and unambiguous language of the Virus Exclusion, Plaintiff baldly alleges that it somehow does not apply.  (First Am. Compl. ¶¶ 69, 78.)  That conclusory

---

[13] Although Plaintiff baldly contends that the Virus Exclusion does not apply because its loss arises from government orders, not COVID-19, *see* First Am. Compl., ¶ 78, the Virus Exclusion excludes coverage for any loss "caused directly or *indirectly*" by a virus.  (Ex. A at DEF_00000090 (emphasis added).)  The Virus Exclusion further provides that the "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.* at DEF_00000090.)  Plaintiff cannot dispute that the government-issued orders upon which it relies resulted from a virus.  Moreover, to the extent Plaintiff alleges that its loss arises solely from government orders, divorced from any physical damage caused by a virus, that loss is not covered under the plain terms of the Policy, which requires "direct physical loss" to trigger coverage. Government regulations that limit or suspend Plaintiff's operations are not covered under the Policy.

legal assertion lacks any factual support and is contradicted by the plain terms of the Policy and the unambiguous language of the exclusion. *See Reeves v. Travelers Companies*, 296 F. Supp. 3d 687, 691 (E.D. Pa. 2017) ("When the terms of an insurance policy are clear and unambiguous, the court is bound to give effect to the policy and cannot interpret the policy to mean anything other than what it says.") (internal quotations and citation omitted). Thus, the Court cannot consider it in ruling on a motion to dismiss. *See Bell*, 2020 WL 1288484, at *3 ("Nor is [the Court] required to credit factual allegations contradicted by indisputably authentic documents on which the [FAC] relies"); *Iqbal,* 556 U.S. at 678.

None of the other allegations in the First Amended Complaint voids the clear and unambiguous language in the Virus Exclusion. First, Plaintiff argues that it "did not receive the benefit of any bargain" related to the Virus Exclusion. (*See* First Am. Compl. ¶¶ 74-75.) The Policy, however, shows that Plaintiff received the exact bargain to which it agreed. The Virus Exclusion is conspicuously located in property coverage section of the Businessowners Coverage Form. (*See* Ex. A at DEF_00000074, DEF_00000090-93.) It was and is part of the property coverage for which Plaintiff originally bargained and that it received. Plaintiff's bald allegation that it "did not receive the benefit of [its] bargain" is baseless and contradicted by the plain language in the Policy.

Second, Plaintiff's allegation that an insured would believe the Virus Exclusion "relate[d] to liability claims against the insured for transmitting the virus, not property damage claims" is contradicted by the plain language of the Policy. (First Am. Compl. ¶ 77). The Virus Exclusion is included in the portion of the Policy that specifically addresses property damage claims. (*See* Ex. A at DEF_00000074 ("SECTION I - PROPERTY" includes "Exclusions" set forth on DEF_00000090 and, specifically, the Virus Exclusion set forth on DEF_00000093).) It *is not*

included within the section addressing liability claims.  (*See* Ex. A at DEF_00000108 (SECTION II -LIABILITY".).)[14]  The Virus Exclusion thus clearly excludes property claims like this one. Plaintiff's conclusory allegations regarding an insured's "expectation" cannot overcome the clear language in the Policy.[15]

The express terms of the Policy control, and the Court cannot credit Plaintiff's contrary allegations for purposes of this Motion.  *See Bell*, 2020 WL 1288484, at *3 (Court is not "required to credit factual allegations contradicted by indisputably authentic documents on which the [FAC] relies").  Accordingly, and even taking the well pleaded facts of the First Amended Complaint as true, Plaintiff's claims are barred by the Virus Exclusion and must be dismissed under Rule 12(b)(6).

**b.    Regulatory Estoppel Does Not Bar Application of the Virus Exclusion.**

Plaintiff also asserts that the Virus Exclusion is unenforceable under the theory of regulatory estoppel.  (First Am. Compl. ¶¶ 79, 112.)  The allegations in the First Amended Complaint, however, contradict that assertion.

---

[14] Indeed, liability coverage under Section II includes its own "Communicable Disease Exclusion" that, among other things, excludes liability for negligence in "fail[ing] to prevent the spread of [a] disease."  (Ex. A at DEF_00000152.)

[15] For the same reason, to the extent Plaintiff contends that its "reasonable expectation" regarding coverage voids the Virus Exclusion, that expectation *cannot* contradict the plain language of the Policy.  *See J.H. France Refractories Co. v. Allstate Ins. Co.*, 578 A.2d 468, 472 (Pa. Super. Ct. 1990) ("[a]ny reasonable expectation which would be imputed to the parties by this or any court must necessarily rely upon, and be reasonably consistent with, the written document and phraseology, simply because any interpretation advanced contrary to the contents of the written document could hardly be viewed as "reasonable" to assert; unless good reason in law is advanced for the disregarding of the clearly contrary phraseology."); *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (reasonable expectations of parties to insurance contract are generally determined by language of contract itself); *Haines v. State Auto Prop. & Cas. Ins. Co.*, No. 08-CV-5715, 2010 WL 1257982, at *5 (E.D. Pa. Mar. 25, 2010), aff'd, 417 F. App'x 151 (3d Cir. 2011) (finding insured's expectations could not overcome plain language in policy).

Under Pennsylvania law,[16] the essence of regulatory estoppel is a change in a party's legal position that is inconsistent with the position previously taken in front of a regulatory body:

> In essence, the [regulatory estoppel] doctrine prohibits parties from switching legal positions to suit their own ends. Thus, having represented to the insurance department, a regulatory agency, that the new language in the [] policies . . . did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders.

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192-93 (Pa. 2001).  To establish regulatory estoppel, Plaintiff must show that a party: (1) made a statement to a regulatory agency; (2) the regulatory agency relied upon the statement when deciding the issue presented to it; and (3) the party subsequently adopted a litigation position opposite to the one it presented to the regulatory agency.  *Simon Wrecking Co., Inc.*, 530 F. Supp. 2d at 714 (citing *Sunbeam Corp.*, 781 A.2d at 1189); *Hussey Copper Ltd. v. Royal Ins. Co. of Am.*, No. 07-758, 2009 WL 2913959, at *1 (W.D. Pa. Sept. 9, 2009).  Specifically, Plaintiff must show that Allstate took a position that "*directly contradict[s]*" the position it takes now.  *Takeda Pharms. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 207 (E.D. Pa. 2019) (emphasis added).  "An industry that makes representations to a regulatory agency to win agency approval will not be heard to assert the opposite position when claims are made by [litigants such as] insured policyholders."  *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010) (internal quotations and citation omitted); *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 991-92 (3d Cir. 1996) (regulatory estoppel applied where insurer sought to give language different meaning than the meaning previously proffered to regulators).

---

[16] Regulatory estoppel is governed by substantive state law.  *See Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 530 F. Supp. 2d 706, 711–12 (E.D. Pa. 2008), on reconsideration, 541 F. Supp. 2d 714 (E.D. Pa. 2008) (finding Pennsylvania regulatory estoppel law controlled because Pennsylvania law governed dispute).

There is no allegation that Allstate itself made any representations to the Department of Insurance regarding the effect of the Virus Exclusion.  Plaintiff apparently assumes that Allstate can be estopped as a result of ISO's representations to regulators because Allstate utilizes the ISO form virus exclusion.[17]  This Court need not address whether regulatory estoppel can be applied vicariously, however, because the First Amended Complaint itself demonstrates that Allstate's position here is *entirely* consistent with ISO's regulatory submissions, and that the doctrine of regulatory estoppel does not apply in any event.

Plaintiff's First Amended Complaint relies upon an ISO Circular[18] published in 2006 that includes the 2006 ISO regulatory filing for approval of the Virus Exclusion.  ISO's position in that filing is *identical* to the coverage position Allstate takes here.  Specifically, the ISO Regulatory filing states:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.
>
> ****
>
> ***The amendatory endorsement presented in this filing states that there is no coverage for loss or damage caused by or resulting from any virus,***

---

[17] ISO is the Insurance Services Office, Inc.  According to the First Amended Complaint, ISO and the American Association of Insurance Services ("AAIS") represented hundreds of insurance carriers in seeking approval from State insurance regulators for the adoption of the Virus Exclusion. (First Am. Compl., ¶ 80.)  Allstate's Policy utilizes the ISO Virus Exclusion Form. (Ex. A at DEF_00000090-93.)

[18] The ISO Circular is referenced in Plaintiff's Complaint.  (*See* First Am. Compl. ¶ 82.)  In deciding a motion to dismiss, "the Court may consider . . . documents incorporated into the [complaint] by reference, and matters of which a court may take judicial notice." *Bell*, 2020 WL 1288484, at *3.  Here, the Complaint incorporates ISO's submission to state regulators and relies on that submission to support Plaintiff's estoppel claim. The Court may thus consider the written submission when deciding this Motion.  *Id.*

> *bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion (which is set forth in Paragraph B of the endorsement) applies to property damage, time element and all other coverages*; introductory Paragraph A prominently makes that point. Paragraphs C and D serve to avoid overlap with other exclusions, and Paragraph E emphasizes that other policy exclusions may still apply.

(ISO Circular, attached hereto as <u>Exhibit J ("Ex. J")</u> at p. 7 (emphasis added).)

Thus, ISO fully disclosed that in the event of a pandemic or similar event, insureds might attempt to expand coverage under existing policies, and that the Virus Exclusion was being proffered to make clear that there was no coverage for virus-related losses.  That position is squarely in line with Allstate's position here, i.e., that there is no coverage based on the Virus Exclusion, and that in any event Plaintiff cannot establish direct physical loss.  So, even taking the facts pleaded in Plaintiff's First Amended Complaint as true, Allstate's position with respect to coverage under the Policy is identical to the position ISO took when it submitted the Virus Exclusion for approval.  In those circumstances, regulatory estoppel simply does not apply.

Plaintiff nevertheless alleges that when it submitted the virus exclusion to regulators, ISO misrepresented that property coverage policies had not previously been a source of recovery for virus-related losses.  (First Am. Compl. ¶¶ 85, 87.)[19]  But Plaintiff cites no authority establishing

---

[19] However, the First Amended Complaint does not claim that the submission was in any way misleading.  For example, Plaintiff's Complaint fails to mention that the submission contains the following statements:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

> ****

> Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself

coverage for virus-related losses prior to submission of the ISO exclusion, and Allstate has found none.  On the contrary, although not directly on point, the law that existed at the time the virus exclusion was submitted appears to support the ISO statement.  *See e.g., Port Auth. of N.Y. and N.J.*, 311 F.3d at 235 (citing 10 Couch on Insurance § 148:46 (3d ed. 1998)) ("[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure.").  *Port Authority* was issued in 2002, just four years before ISO submitted the virus exclusion for approval.  Thus, no facts are pleaded (or could be pleaded) that would establish that ISO's statement was incorrect or misleading.[20]

Finally, even where otherwise applicable, regulatory estoppel does not void clear and unambiguous policy provisions or provide a basis for rescission.  It simply prevents a party from asserting a position in litigation contrary to that previously asserted before the regulatory agency.  *Simon Wrecking Co., Inc., supra,* 530 F. Supp. 2d at 711.  Since the First Amended Complaint identifies no position currently being taken by Allstate that is in any way contrary the positions asserted in the ISO submission, there is nothing to "estop."

---

would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

(ISO Circular, Ex. J at pp. 6-7.)  So, the ISO submission simply disclosed that whether virus-related claims could, in some limited circumstances, constitute actual property damage "may be a point of disagreement in a particular case." There is nothing even arguably misleading about that, and the exclusion was proffered expressly for the purpose of eliminating any doubt.  *Id.*

[20] Even if ISO's statement about sources of recovery was arguably incorrect – and it was not – regulatory estoppel would still not apply.  To invoke regulatory estoppel, Plaintiff must show that Allstate is taking a legal position *contrary* to the position previously taken before a regulatory body.  *Simon Wrecking Co., Inc.*, 530 F. Supp. 2d at 11.  Plaintiff has identified no inconsistency – and has certainly alleged no "direct contradict[ion]" – between ISO's prior regulatory statements and Allstate's coverage position here.  Regulatory estoppel therefore does not apply. *See Takeda Pharm.*, 400 F. Supp. 3d at 207; *see also Hussey Copper, Ltd. v. Arrowood Indem. Co*., 391 F. App'x at 211 (rejecting regulatory estoppel argument and reasoning that "ISO's statements were not so contrary to [defendant's] position that [defendant ] should be estopped from invoking the pollution exclusion here.").

        **c.**       **Public Policy Does Not Bar Application of the Virus Exclusion.**

Finally, Plaintiff baldly states that the Virus Exclusion is not enforceable as a matter of "public policy." (First Am. Compl. ¶¶ 79, 87.) The First Amended Complaint, however, contains no facts establishing that the Virus Exclusion violates public policy and cites no authority suggesting that the exclusion runs afoul of any legislatively or judicially established policy of Pennsylvania. And, as discussed above, courts across the country have enforced the virus exclusion notwithstanding public policy concerns. *See, e.g., Turek,* 2020 WL 5258484, at *9, n.3 (finding virus exclusion enforceable despite insured's allegation that it was against public policy). Plaintiff cannot simply contrive some previously unheard of "policy" out of whole cloth simply because it does not like the exclusion's effect, nor can it invalidate the plain terms of the Policy with threadbare legal conclusions. *See Bell*, 2020 WL 1288484, at *3 (Court is not "required to credit factual allegations contradicted by indisputably authentic documents on which the [FAC] relies").

        **C.**       **Plaintiff Should Not be Granted Leave to Amend.**

The Court may refuse to grant leave to amend when the "amendment would be futile." *Murphy,* 2020 WL 3790535, at *3 (quoting *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 210 (3d Cir. 2019)); *see also U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) ("Repleading is futile when the dismissal was .... based on some legal barrier other than want of specificity or particularity.").

Here, Plaintiff had an opportunity to amend the allegations in the Complaint. Indeed, Plaintiff filed the First Amended Complaint in response to Allstate's original Motion to Dismiss. The First Amended Complaint, however, still fails to state a claim. Plaintiff's inability to plead facts that would establish a covered, non-excluded loss highlights that any further amendment would be futile. For that reason, the First Amended Complaint should be dismissed without leave

to amend.

## V.    CONCLUSION

For all the reasons set forth above, the First Amended Complaint should be dismissed in its entirety, without leave to amend, as any amendment would be futile under the facts giving rise to the Plaintiff's loss and, in any event, the plain language in the Virus Exclusion.

Respectfully submitted,

Dated:  September 22, 2020                /s/ *Jeffrey A. Zachman*
                                         Jeffrey A. Zachman (admitted *pro hac vice*)
                                         Dentons US LLP
                                         303 Peachtree St., NE Suite 5300
                                         Atlanta, GA  30308
                                         Telephone:  404.527.4000
                                         Facsimile:  404.527.4198
                                         jeffrey.zachman@dentons.com

                                         Richard L. Fenton (admitted *pro hac vice*)
                                         Dentons US LLP
                                         233 S. Wacker Drive, Suite 5900
                                         Chicago, IL  60606
                                         Telephone:  312.876.8000
                                         Facsimile:  312.876.7934
                                         richard.fenton@dentons.com

                                         Douglas Y. Christian (PA Id. No. 41934)
                                         Terrence M. Grugan (PA Id. No. 307211)
                                         Brittany M. Wilson (PA Id. No. 313765)
                                         Ballard Spahr LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, PA 19103-7599
                                         T: 215-665-8500
                                         F: 215-864-8999
                                         christiand@ballardspahr.com
                                         grugant@ballardspahr.com
                                         sacaliss@ballardspahr.com

*Attorneys for Defendant, Allstate Insurance Company*