**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN HANDEL D.M.D., P.C. | : | |
| | : | CIVIL ACTION |
| PLAINTIFF, | : | NO.: 2:20-CV-03198 |
| V. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | |
| | : | |
| DEFENDANT. | : | JURY TRIAL DEMANDED |

**PLAINTIFF BRIAN HANDEL D.M.D., P.C.'S RESPONSE IN OPPOSITION
TO THE MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)
BY DEFENDANT, ALLSTATE INSURANCE COMPANY**

**ANAPOL WEISS**
Sol H. Weiss, Esquire
James R. Ronca, Esquire
Gregory S. Spizer, Esquire
Ryan D. Hurd, Esquire
Paola Pearson, Esquire
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
sweiss@anapolweiss.com
jronca@anapolweiss.com
gspizer@anapolweiss.com
rhurd@anapolweiss.com
ppearson@anapolweiss.com

Counsel for Plaintiff

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…..……………………………………..…..iii

I.  STATEMENT OF FACTS…………….…………………………...1

II.  STANDARD OF REVIEW ……………………………………………3

III. ARGUMENT…………………………………………...……………5

    A.    Vague and Ambiguous Policy Language Must Be Construed
        in Favor of Coverage…………………………………………5

    B.    Plaintiff Suffered Direct Physical Loss of Or Damage to the
        Insured Property…...…………………………………….........8

    C.    Plaintiff's Claim Triggers Coverage Under the Policy's
        Civil Authority Section………………………...………………13

    D.    Plaintiff Sufficiently Alleged Physical Loss of or Damage
        To Property to State Claims for Business Income and
        Civil Authority Coverage…..……………………………… 20

    E.    Recent COVID-19 Business Income Loss Cases
        have denied motions to dismiss…………………………….......23

    F.    Recent COVID-19 Business Income Loss Cases
        are Non-Precedential and Distinguishable…………………….....24

    G.    If the Court interprets the Business Income coverage
        forms in the manner suggested by Defendant, the coverage
        for expenses would be illusory…….…………………….……...29

    H.    The "Virus Exclusion" does not apply to Claims for Expenses………30

    I.    The Defendant should be estopped from enforcing the virus
        exclusion because of  misrepresentations to the Pennsylvania
        Insurance Regulator and their insureds………………………....35

    J.    The Virus Exclusion is Not Clear or Unambiguous…………………39

IV. CONCLUSION………………………….…………………………… 40

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*10E LLC v. Travelers Indem. Co. of Conn.* ...........................................................27

Am. Motorists Ins. Co. v. L–C–A Sales Co., 713 A.2d 1007 (N.J.1998) ................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................4

*Assurance Co. of Am. v. BBB Serv. Co., 265 Ga. App. 35, 593 S.E.2d 7, (2003)*…15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................4

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ..............................4

*Case No. 20-cv-03127-SRB* (W.D.MO., August 12, 2020).....................................19

*Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231 (3d Cir.2006) .......5

*Customized Distribution Services v. Zurich Insurance Co.,* 862 A.2d 560 (N.J. Super. Ct. App. Div. 2004)……………………………………………………...9-10

*Diesel Barbershop, LLC v. State Farm Lloyds* .......................................................25

*Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009)........................8

*Feszchak v. Pawtucket Mut. Ins. Co.,* No. 06–0076, 2008 U.S. Dist. LEXIS 29295 (D.N.J. April 8, 2008) ............................................................................................5

*Fireman's Fund Insurance Co. v. Community Coffee Co.,* C.A. No. 06-2806, 2007 WL 1076790, at *1 (E.D. La. Apr. 9, 2007)………………………………….. 8-9

*Friends of Danny DeVito v. Tom Wolf, 68 MM 2020 (Pa. April 13, 2020)* ............14

*Frupac Int'l Corp. v. Fireman's Fund Ins. Co.*, Civ. A. No. 90-1537, 1990 WL 204380 (E.D. Pa. Dec. 11, 1990)……………………………………………..10

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.* .......................................................... 26

*General Refractories Co v. First State Ins. Co., 94 F. Supp.3d 649, 658, 660 (E.D. Pa. 2015)* ............................................................................................................. 7

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. ofAm.,* No. 2:12-cv-04418 (WHW) (CLW), 2014 U.S. Dist. LEXIS165232 (D.N.J. Nov. 25, 2014). ........... 8

*Harr v. Allstate Insurance Co., 54 N.J. 287, 255 A.2d 208 (1969)* ....................... 20

*Haun v. Cmty. Health Sys., Inc., 14 A.3d 120, 123 (Pa. Super. Ct. 2011)* ............. 34

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005). ........................................... 4

*Hussey Copper, Ltd. v. Royal Ins. Co. of Am.* ....................................................... 36

*Kunji Harrisburg, LLC v. Axis Surplus Ins. Co., 2020 WL 1469905, at \*3 (E.D. Pa. Mar. 18, 2020).* .................................................................................................. 5

*Larkin v. Geico Gen. Ins. Co., 2015 WL 667515, at \*3 (E.D. Pa. Feb. 13, 2015)*.... 6

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).. 5

*Malaube, LLC v. Greenwich Ins. Co.,* No. 20-22615-Civ, 2020 U.S. Dist. LEXIS 156027(S.D. Fla. Aug 26, 2020) ..................................................................... 27

*Martinez DMD P.A. v. Allied Insur. Co. of America* ............................................ 26

*Morton International Inc v. General Accident Insurance Co.,*134 N.J. 1, 629 A.2d 831 (1993)…………………………………………………………………………...18-22

*Matzner v. Seaco Ins. Co.,* 9 Mass L. Rptr. 41, 1998 WL566658 (Sup.Ct. August 12, 1998).* ...................................................................................................... 11

*Medical Protective Co. v. Watkins,* 198 F.3d 100, 104 (3d Cir. 1999) (Pennsylvania Law).* .......................................................................................................... 6

*Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005) ................ 8

*Mudpie, Inc. v. Travelers Casualty Ins. Co. of America, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020)* ............................................................................ 24

*Murray v. State Farm and Cas. Co.,* 203 W.Va. 477, 509 SE.2d 1, 17 (1998).......10

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.* No. 01-4679, 2002 WL 31247972, at *5 (E.D. Pa. Sept. 30, 2002) ...............................................................4

*N. Plainfield Bd. of Educ. v. Zurich Am. Ins. Co*, 2008 WL 2074013, at *7 (D.N.J. May 15, 2008), aff'd, 467 F. App'x 156 (3d Cir. 2012)...........................................6

*Nat'l Union Fire Ins. Co. v. Allfirst Bank, 282 F. Supp.2d 339, 351 (d. Md. 2003)* ...................................................................................................................24

*Optical Services USA/JCI et. al v. Franklin Mutual Insurance Company*..............23

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*...................................................19

*Phillips v. Cty of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ......................................3

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, (3d Cir. 2002) ...................................................................................................................8

*Rhonda Hill Wilson, Esq. et. al. v. Hartford Casualty Insurance Company et. al.,* No. 2:20-cv-03384 (E.D.PA., Sept. 30, 2020).......................................................28

*Ridley Park Fitness, LLC v. Philadelphia Indemnity Insurance Company,* Case ID 200501093 (Pa. Ct. Com. Pl. Phila. August 31, 2020).......................................23

*Rose's 1, LLC v. Erie Ins. Exch.*..............................................................................25

*Sentinel Management Co v. New Hampshire Ins. Co*., 563 NW.3d 296, 300 (Minn. App. 1997). ........................................................................................................11

*Simon Wrecking Co. v. AIU Ins. Co.,* 541 F. Supp. 2d 714, 717 (E.D. PA. 2008)..34

*Ski Shawnee, Inc. v. Commonwealth Ins. Co*..........................................................18

*Sloan v. Phoenix of Hartford Ins. Co*., 46 Mich. App. 46, 51, 207 N.W.2d 434, 437 (1973)..................................................................................................................15

*Sparks v. St. Paul Insurance Co.,* 100 N.J. 325, 495 A.2d 406 (1985) ...................6

*Studio 417 Inc. v. The Cincinnati Insurance Compan*y, No. 20-cv-03127-SRB
   (W.D. MO., August 12, 2020) ............................................................................12

*Sunbeam Corp. v. Liberty Mut. Ins. Co.,* 781 A.2d 1189 (Pa. 2001) ......................34

*Syufy Enterprises v. Home Ins. Co. of Indiana,* 1995 WL 129229, at *1 (N.D. Cal.
   Mar. 21, 1995).................................................................................................19

*Turek Enters, Inc. v. State Farm Mut. Auto Ins. Co.,* 20-11655, 2020 WL 5258484
   (E.D.) Mich. Sept 3, 2020)...............................................................................26

*Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company, LTD,*
   Case No. 6:20-cv-1174-Orl22EJK (M.D.FL. September 24, 2020) ...................37

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co*., 406 N.J. Super. 524, 968 A.2d
   724 (App. Div. 2009) ..........................................................................................6

*Weisman v. Green Tree Ins. Co., 447 Pa. Super. 549, 670 A.2d 160, 162 (1996)*…6

*Windt, Insurance Claims & Disputes* (Thomson/West 2013 6th Edition) (2020
   Supplement) .......................................................................................................6

**Rules**

Rule 12(b)(6)...........................................................................................................3-4

Rule 8(a)(2).................................................................................................................4

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendant Allstate Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6) should be denied because the Complaint on its face alleges a reasonable expectation that Brian Handel D.M.D., P.C. purchased insurance for business interruption and Civil Authority losses. The Complaint points out ambiguous policy language and phrasing which under Pennsylvania insurance law militates against denying coverage.  Moreover, Pennsylvania public policy prohibits the narrow interpretation of contracts where the insured has paid premiums expecting protection from business losses.

## I.  STATEMENT OF FACTS

Plaintiff owns and operates a dental practice in Philadelphia, Pennsylvania. (*See* Complaint attached at Exhibit A, ¶1). Plaintiff alleged the adverse impact of COVID-19 on its business, including the physical loss or damage to its property. (Ex. A, ¶¶27, 39, 43, 52-58, 71, 102-108). Plaintiff purchased commercial multiple peril insurance from Defendants, including specialty property coverage. (Ex. A, ¶3). Plaintiff's insurance policy is an "all-risk" policy that provides coverage for all non-excluded business losses. This insurance policy expressly includes "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property and "Civil Authority" coverage which

promises to pay for losses caused by a civil or governmental authority that prohibits access to the covered property. (Ex. A, ¶4).

On or about March 18, 2020, Plaintiff was forced to suspend or reduce business operations when state and local authorities ordered the closure of all non-life sustaining businesses and prohibited elective medical procedures in the State of New Jersey in an effort to protect the public from the global pandemic caused by COVID-19, which has now infected more than 7,000,000 people throughout the United States.  (Ex. A, ¶6). Covid-19 is a physical substance. (Ex. A, ¶45).  Covid-19 remains viable on various surfaces up to 72 hours. (Ex. A, ¶46).  The ability of the deadly virus to physically infect and remain on surfaces of objects or materials, i.e. "fomites," for up to twenty-eight (28) days has prompted health officials in countries like China, Italy, France and Spain to disinfect and fumigate public areas before reopening them. (Ex. A, ¶47). The insurance industry has recognized that disease causing agents can cause direct physical damage. (Ex. A, ¶50). Plaintiff properly alleged that Covid-19 in the environment on and around the insured premises renders the premises unsafe and unfit for its intended use.  Plaintiff alleged both as a fact and as a necessary finding to support the civil authority orders that Covid-19 is a serious health hazard. (Ex. A, ¶¶59-67).  Plaintiff made a claim for business interruption, civil authority, and/or extra expense coverage to recoup substantial, ongoing financial losses directly attributed to (1) the loss of use of the

2

insured premises due the presence of the COVID-19 virus on the property and surrounding properties and (2) the series of COVID-19 closure orders. (<u>Ex. A</u>, ¶¶6-7). By letter dated May 28, 2020, Defendant formally denied Plaintiff's claim. (<u>Ex. A(2)</u>, ¶8).

Additionally, Plaintiff alleged that the virus exclusion added to the policy was not a clarification that the policy did not cover disease causing agents (<u>Ex. A</u>, ¶¶ 79-89) but rather a wholly new exclusion limiting coverage that was previously available. *Id.* The insured was never properly informed on the new limitation on coverage nor was there any bargain for the limitation as there was no reduction in premium. *Id.* Based on these allegations, among others, the virus exclusion is inapplicable because of the Defendant's misrepresentation and regulatory estoppel.

## II.  STANDARD OF REVIEW

A court considering a motion to dismiss pursuant to Rule 12(b)(6)  must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, that plaintiff may be entitled to relief." *Phillips v. City of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint … and any

matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff has surely satisfied the pleading requirement of Rule 8(a).

The defendant bears the burden of showing that no plausible claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Moreover, Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the

4

necessary element." *Id.* at 234. This complaint alleges more than enough facts to defeat Defendant's motion to dismiss.

## III.  ARGUMENT

### A.  Vague and Ambiguous Policy Language Must Be Construed In Favor of Coverage

The methodology to be employed in resolving the legal coverage dispute is of prime importance. When interpreting an insurance policy, any ambiguity must be construed in favor of the insured. Ambiguity exists where more than one reasonable interpretation of policy language is present. The insurer is bound by the expectations it creates and any other reasonable expectation of the insured.

Here, the parties offer two interpretations of the policy language. If Plaintiff's interpretation of the words used in the policy is reasonable, then the policy is ambiguous, and that ambiguity must be resolved in favor of coverage. It is irrelevant whether the insurer's interpretation may be considered more reasonable than the insured's interpretation. The law only requires that the insured's interpretation be reasonable. In this case, because an ambiguity exists, adopting Defendant's position would resolve the ambiguity in favor of the insurer, in direct contravention of Pennsylvania law.

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106

(Pa. 1999) (citation and internal quotation marks omitted); *Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*, 2020 WL 1469905, at *3 (E.D. Pa. Mar. 18, 2020)("[I]n construing any written instrument, and particularly an insurance contract, the instrument must be strictly construed against the writer.")(citations omitted). A provision is ambiguous if reasonable people could fairly ascribe differing meanings to it. *Larkin v. Geico Gen. Ins. Co.*, 2015 WL 667515, at *3 (E.D. Pa. Feb. 13, 2015) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999));

As discussed in the leading treatise on insurance coverage issues, *Windt, Insurance Claims & Disputes* (Thomson/West 2013 6th Edition) (2020 Supplement), Section 6.2, pages 6-60 to 662, if an ambiguity exists, "the interpretation that is most favorable to the insured will be adopted".

> It is not enough for the insurer's interpretation to be adopted that its interpretation is more reasonable than the insured's interpretation. Otherwise, one would be resolving the ambiguity in favor of the insurer, in contravention of the foregoing rules. *Windt*, Section 6.2, page 6-65.

For example,  in *Medical Protective Co. v.  Watkins*, 198 F.3d 100, 104 (3d Cir. 1999) (Pennsylvania law) an insurer argued that an exclusion applied, and the court did not dispute that the insurer's interpretation was reasonable. The court nevertheless held in favor of the insured because the interpretation offered by the insured was also reasonable. The court also reiterated the principle that "if a court should err in determining the meaning of an insurance policy provision, its error

6

should be in favor of coverage for the insured."[1] The Court added, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured. *Med. Protective Co.*, 198 F.3d at 106. "[T]he insurer is bound not only by the expectations that it creates, but also by any other reasonable expectation of the insured. The insured's reasonable expectations control, even if they are contrary to the explicit terms of the policy." *Id.* at 106.

Plaintiff posits reasonable interpretations of the "Business Income" portion and the "Civil Authority" portion of the policy to which Defendant disagrees. Because Plaintiff's interpretation is reasonable, yet differs with Defendant's, the policy is ambiguous. That ambiguity can only be resolved one way. This Court is bound to conclude that Plaintiff is entitled to coverage under both of those coverage parts by reason of the government's virus-related directives. Defendant cannot prevail by arguing that its reasonable interpretation of policy language leads to the conclusion that coverage does not exist.

---

[1] See also, *Weisman v. Green Tree Ins. Co.*, 447 Pa. Super. 549, 670 A.2d 160, 162 (1996) (Although the insured's suggested definition of the word "explosion" in the policy was not "commonly used," court held in favor of the insured because the word "explosion" was "susceptible to more than one meaning"); *General Refractories Co v. First State Ins. Co.*, 94 F. Supp.3d 649, 658, 660 (E.D. Pa. 2015) ("Where more than one reasonable construction exists, the construction that favors coverage must be applied." "As between [the insurer and insured] which proffers the more reasonable interpretation... is not decided here. It is ruled only that [insured's] interpretation …. is consistent with the plain meaning of the written policy terms and common English usage. That is, [insured's] interpretation is objectively reasonable.")

**B. PLAINTIFF SUFFERED DIRECT PHYSICAL LOSS OF OR DAMAGE TO THE INSURED PROPERTY AND COVERAGE EXISTS IN THE BUSINESS INCOME SECTION OF THE POLICY**

Defendant asserts that Plaintiff failed to allege facts of "direct physical loss" of the insured property. However, Defendant's argument sets up a false premise by conflating "loss" and "damage" terms which are used differently in various sections of the policy. In the policy, Defendant agreed to "pay for direct physical loss *of* or damage *to* Covered Property . . . caused by or resulting from any Covered Cause of Loss." Ex. A(1), Form BP 00 03 07 13, Section I.A, p. 1 of 53 (emphasis added). The prerequisite to coverage under the insuring agreement for "Business Income" is that the suspension of the insured's operations have been caused by "direct physical loss of or damage to property" at the insured premises.

The Business Income coverage form says:

> (1) Business Income
> (a) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss *of* or damage *to* property at the described premises.
>
> Ex. A(1), Form BP 00 03 07 13, Section I.A3.a.(2).

Coverage exists, therefore, either: (a) if Plaintiff suspended operations because of a direct physical loss *of* property; or (b) if Plaintiff suspended operations

8

because of direct physical damage *to* property. The policy language can reasonably be interpreted to lead to the conclusion that Plaintiff's suspension of operations was caused both by a direct physical loss *of* and by direct physical damage *to* property. The prerequisites to coverage under the "Business Income" coverage part are satisfied. The presence of a virus on or in close proximity to the property results in "direct physical loss of or damage to" the insured property.

The policy uses both terms, "loss" and "damage" in the same sentence. Thus, each term must have a different meaning. A reasonable meaning of "loss" is "loss of use". As alleged in Plaintiff's Amended Complaint, "Loss has been defined as follows:

    a.  Loss is the fact of no longer having something or having less of it than before.[2]

    b.  Loss is the disadvantage you suffer when a valuable and useful thing is taken away.[3]

    c.  Decrease in amount, magnitude or degree.[4]" Ex. A(1), ¶40).

Here the presence of COVID-19 in and near the premises and the imminent danger it presents deprives the Plaintiff of the use of its property. It is "direct"

---

[2] https://www.collinsdictionary.com/us/dictionary/english/loss
[3] *Id.*
[4] https://www.merriam-webster.com/dictionary/loss

because there is no intervening factor. It is physical because, as alleged, it is a

physical substance just like a noxious odor.

> "[P]hysical loss or damage" occurs only if an actual
> release of asbestos fibers from asbestos-containing
> materials has resulted in contamination of the property
> such that its function is nearly eliminated or destroyed, or
> the structure is made useless or uninhabitable, <u>or if there
> exists an imminent threat of the release of a quantity of
> asbestos fibers that would cause such loss of utility</u>."

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir.

2002)(emphasis added).

In the instant case, the imminent threat of the release of the virus, eliminates

the property's function and makes the structure virtually useless for its intended

business purpose, which is how Plaintiff derives its business income. The same is

true of *e-coli* in the water, *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823,

826-27 (3d Cir. 2005) ("direct physical loss or damage" requirement satisfied by e-

coli, which had "reduced the <u>use</u> of the property to a substantial degree"), a noxious

odor, *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) or

ammonia in the air. *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,

2014 U.S. Dist. LEXIS165232, at *13 (D.N.J. Nov. 25, 2014).

Courts interpreting the same policy language that is at issue in the matter at

hand have held that there can be a physical loss of a building without there having

been a physical alteration of the building. It is enough that there has been a loss of

use of the building. Illustrative cases include *Murray v. State Farm and Cas. Co.*, 203 W.Va. 477, 509 SE.2d 1, 17 (1998) ("Losses... rendering the insured property <u>unusable</u> or uninhabitable may exists in the absence of structural damage to the insured property") (emphasis added); *Sentinel Management Co v. New Hampshire Ins. Co.*, 563 NW.2d 296, 300 (Minn. App. 1997)("Direct physical loss may exist in the absence of structural damage to the insured property....Although asbestos contamination does not result in tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property rendered <u>useless</u> by the presence of contaminants")(emphasis added); *Matzner v. Seaco Ins. Co.*, 9 Mass L. Rptr. 41, 1998 WL566658 (Sup.Ct. August 12, 1998)("(T)he phrase 'direct physical loss or damage' is ambiguous in that it is susceptible of at least two different interpretations. One includes only tangible damage to the structure of insured property. The second includes a wider array of losses"). As made clear by the above discussion, it is reasonable to say that there is a "physical loss of" use of a building when the building cannot be used.

Courts have even found "physical damage" where there was no structural damage, but merely a perceived damage. In *Fireman's Fund Insurance Co. v. Community Coffee Co.*, the insured sought recovery for hurricane-related damage to green coffee inventories in New Orleans warehouses. C.A. No. 06-2806, 2007 WL 1076790, at *1 (E.D.La. Apr. 9, 2007). The "property damage" alleged by the

insured was not "physical damage" to the coffee but rather a diminution in value of the coffee due to the "general perception or concern" among buyers regarding the condition of the green coffees stored in the New Orleans area during Hurricane Katrina. *Id.* at *3 (emphasis added). Even though the property was otherwise undamaged, the insured claimed it as "lost" because of the "Katrina Effect" (i.e., the perception of consumers that any property in New Orleans had been damaged or impaired from the hurricane). *Id.* at *3. The court denied the motion for summary dismissal and found that a genuine issue of material fact existed as to whether the coffee actually suffered physical damage. *Id.* at *4.

The "Covid-19 Effect" similarly produces physical loss of and damage to the property as social anxiety over public health and a society's change in perception that indoor establishments are unsafe creates "physical loss of and damage" for purposes of commercial property coverage—even with respect to property that has purportedly sustained no physical injury or damage. *See Customized Distribution Services v. Zurich Insurance Co.*, 862 A.2d 560 (N.J. Super. Ct. App. Div. 2004)(It was not necessary that the product's material or chemical composition be altered. The customers' change in perception was the "functional equivalent of damage of a material nature or an alteration in physical composition."); *See also*, *Frupac Int'l Corp. v. Fireman's Fund Ins. Co.*, Civ. A. No. 90-1537, 1990 WL 204380 (E.D. Pa.

Dec. 11, 1990)(considering a claim for loss of uncontaminated fruit that no consumer would buy after isolated cases of cyanide poisoning in Chilean fruit in 1989).

Given the intense public and individual concerns for health and safety, Plaintiff's business -even assuming no confirmed exposure to COVID-19- has suffered reduced operations and loss of income.  The "Covid-19 Effect" caused substantial physical loss of and damage to Plaintiff's covered property.  Plaintiff met its burden of alleging its losses fall within the Policy's coverage.

## C. PLAINTIFF'S CLAIM TRIGGERS COVERAGE UNDER THE POLICY'S CIVIL AUTHORITY PROVISION

The policy Plaintiff purchased provided coverage to compensate Plaintiff for business income losses when an order of a civil authority prohibits access to the insured premises in response to dangerous physical conditions.  The policy says:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense cause by action of civil authority that prohibits access to the described premises, provided that both the following apply:
>
> (1) Access to the area immediately surrounding the damage property is prohibited by civil authority as a result of the damages, and the described premises are within that area but not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause

13

of Loss that caused the damage…" <u>Ex. A(1)</u>,
Form BP 00 03 07 13, Section I.A.5(i), p. 9 of 53.

The above civil authority coverage form, broken down, requires (1) an order of a Civil Authority that prohibits access to the insured premises, (2) issued because of damage to a property within 1 miles, (3) caused by dangerous conditions resulting from a covered cause of loss. "Covered Causes of Loss" is defined as "direct physical loss." <u>Ex. A(1)</u>, Section I.A3, p. 2 of 53.

In this case, the Plaintiff's Complaint clearly alleged the existence of civil authority orders prohibiting access. (<u>Ex. A</u>, ¶¶59-67). The first requirement has been satisfied. It is reasonable to interpret the words "denial of access" to a building to encompass a government order to stay-at-home. As a practical matter, the civil authority orders denied access to Plaintiff's premises for all non-emergent procedures and caused a necessary suspension of operations during a period of restoration. The orders told the public, stay at home; you are prohibited from going to the dentist for and your dentist is prohibited from performing elective, non-emergent procedures. The main purpose of the covered premises is the performance of exactly these procedures, just as dining-in is the primary purpose of restaurants. The Orders cited by Plaintiff operate as a blockade that prevents employees and patients from entering and operating the business for its intended primary intended purpose. See *Friends of Danny DeVito v. Tom Wolf*, 68 MM 2020 (Pa. April 13,

2020). In effect, the Supreme Court has recognized that the first requirement has been satisfied. As applied to Plaintiff, the Orders operate as closure orders.

Courts have found that where the order of a civil authority requires an insured's premises to close, there has been a prohibition of access to the insured's business sufficient to trigger coverage for business losses. *See, e.g.*, *Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga. App. 35, 593 S.E.2d 7, (2003) (affirming trial court finding for insured, where county order to evacuate as Hurricane Floyd approached required closure of Plaintiff's restaurant); *Sloan v. Phoenix of Hartford Ins. Co.*, 46 Mich. App. 46, 51, 207 N.W.2d 434, 437 (1973)("A riot ensued, the governor imposed a curfew, and all places of amusement were closed, thus preventing access to plaintiffs' place of business. Therefore, plaintiffs suffered a compensable loss under the terms of the policy.").

The Plaintiff has clearly shown that the orders were as a result of a dangerous physical condition. As stated by the Supreme Court of Pennsylvania: "COVID-19 pandemic qualifies as a 'natural disaster' under the Emergency Code…." *See Friends of Danny DeVito*, 68 MM 2020, p. 24

> "[T]he specific disasters in the definition of "natural disaster" themselves lack commonality, as while some are weather related (e.g., hurricane, tornado, storm), several others are not (tidal wave, earthquake, fire, explosion). To the contrary, the only commonality among the disparate types of specific disasters is that they all involve "substantial damage to property, hardship, suffering or possible loss of life." **In this respect, the**

> **COVID-19 pandemic is of the "same general nature or class as those specifically enumerated," and thus is included, rather than excluded, as a type of "natural disaster."** *Id.* at 24. (emphasis added).

"The COVID-19 pandemic is, by all definitions, a natural disaster and a catastrophe of massive proportions." *Id.* at 25.

The fact that the Closure Orders were designed to prevent harm does not take these orders out of the ambit of the Civil Authority provision. The Eastern District of Pennsylvania addressed a similar issue in a case relating to a civil authority coverage issued by Fireman's Fund. *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. 01-4679, 2002 WL 31247972, at *5 (E.D. Pa. Sept. 30, 2002). In *Narricot, Indus.*, town authorities directed plaintiff to suspend plant operations due to Hurricane Floyd. The defendant insurer argued that because civil authority orders were "preventative," as they were designed to prevent damage from hurricane and flood, these civil authority orders did not result from a "covered cause of loss." *Id.* The Court rejected this argument and found that the "covered cause of loss" (*i.e.*, the hurricane or flood) was the cause of the civil authority orders. "Regardless of whether [the municipality] took the measures to prevent hurricane and flood damage or alleviate the perils caused by hurricane and flood damage, the measures still *resulted* from hurricane and flood." *Id.*

The policy requires that the business suspension have been caused by physical "damage" to property. Plaintiff clearly alleged COVID-19 is dangerous and a

16

physical substance. *See* Section D, *infra*. The only issue is whether there is "damage" to a nearby property caused by the presence of the virus. Importantly, when the defendant wrote its policy, it only used the word "damage" in the civil authority coverage form. Although the civil authority coverage is a continuation of the Business Income coverage form, the phrase used in the latter, "direct physical loss of or damage to property" is different that the single word "damage" used in the former. Under the rules of contract interpretation, loss and damage must have different meanings. The Defendant did not use the modifiers "direct physical" as it did in the Business Income section. The only reasonable interpretation of the word "damage" is a broad definition which need not be "direct" or "physical". The common definition of damage is "harm or injury."[5] The presence of the COVID-19 virus everywhere, including within one mile of the property, is a harm that negatively effects the use of the property. COVID-19 virus on surfaces renders the property damaged.

The policy is additionally ambiguous because the policy does not state whether the suspension caused by civil authority orders had to be necessitated by existing damage, or whether it would be enough that the civil authority orders were necessary because of inevitable future damage. The policy language states that the

---

[5] https://dictionary.cambridge.org/us/dictionary/english/damage. See also https://www.merriam-webster.com/dictionary/damage defining damage as "loss or harm resulting from injury to person, property, or reputation."

action of civil authority must be "taken in response to dangerous conditions resulting from the damage or continuation of the Covered Cause of Loss…."  The ambiguity arises out of the fact that that language can reasonably mean two different things. Must the civil authority action be taken in response to dangerous conditions from damage that already exists, or dangerous conditions from damage that is anticipated to exist from the continuation of the Covered Cause of Loss?

While it is certainly reasonable to interpret the policy language to require that the damage have already existed, it is also reasonable - - not nonsensical - - to interpret the policy language to require only that the suspension be the result of property damage regardless of when the damage takes place. Normally, of course, one would not suspend one's operations because of damage that did not exist; as a result, when reading the policy language, one would not initially think of future damage as being something that can cause a suspension. But future inevitable property damage can cause a suspension, as it did in the matter at hand. And there is nothing in the policy language that unambiguously excludes coverage when a business' operations are, in fact, suspended because of inevitable property damage.

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, cited by Defendant, is not persuasive.  2010 WL 2696782 (M.D.PA). There, due to a bridge collapse, the department of transportation closed a road which was relied upon by 70% of the ski resorts patrons. Access to the property was not completely hindered, and <u>no</u>

restriction was placed on the use of the covered property.   Conversely, in the instant matter, access to Plaintiff's property for the primary use of the property (elective procedures) was prohibited. It is not a case where Plaintiff's patients could simply find a different route to access the property. Plaintiff's patients, a majority of which visit the premises for elective dentistry, were completely prohibited to access the for the type of treatment the premises was used for.[6]

In *Studio 417 Inc. v. The Cincinnati Insurance Company, Case No. 20-cv-03127-SRB*, a similar case arising from an insurer's denial of coverage for business income loss related to COVID-19 and Civil Authority Orders, the United States District Court for the Western District of Missouri correctly denied the insurer's motion to dismiss ruling that the Covid-19 virus causes physical property loss based on allegations in the complaint similar to those in this case. *Case No. 20-cv-03127-SRB* (W.D.MO., August 12, 2020)(See Order and Opinion attached hereto as Exhibit B). The Court further held that the civil authority orders issued as a result of the

---

[6] *Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, at *1 (N.D. Cal. Mar. 21, 1995) is similarly unpersuasive.  There, the parties stipulated that "no civil authority ever specifically prohibited access to a Syufy theater as a result of the Rodney King riots."

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, is similarly distinguishable. 2020 WL 5500221, at *5 (S.D. Cal. Sept. 11, 2020). Unlike Plaintiff here, Pappy's Barber Shop expressly alleged that COVID-19 did not cause physical loss of or damage to their properties, alleging and arguing only that that the government orders themselves constitute direct physical loss of or damage to the properties.

pandemic, as alleged in the complaint, adequately made a claim for civil authority coverage.  The same result is appropriate here.

### D. PLAINTIFF SUFFICIENTLY ALLEGED PHYSICAL LOSS OF OR DAMAGE TO STATE CLAIMS FOR BUSINESS INCOME AND CIVIL AUTHORITY COVERAGE

Despite Defendant's assertions to the contrary, Plaintiff's Complaint repeatedly alleged facts of "physical loss of or damage to its property" sufficient to satisfy Rule 8(a)(2) and to state a claim. The following paragraphs of Plaintiff's Complaint (Ex. A, ¶¶6, 39, 42, 44-46, 51-57, 65, 66, 95-101) allege physical loss or damage:

6.  On or about March 13, 2020, Plaintiff was forced to suspend or reduce business operations following an order from Pennsylvania Governor Tom Wolf mandating the closure of all non-life sustaining businesses in the Commonwealth in an effort to protect the public from the global pandemic caused by COVID-19…

38. The COVID-19 virus causes direct physical damage, as well as indirect non-physical damage, as that word is commonly used.

42. The Business Income, Extra Expense and Civil Authority provisions of the Policy were triggered by damage and loss caused by COVID-19, the related closure orders issued by local, state and federal authorities, and Plaintiff's inability to use and/or restricted use of the Covered Property.

44. COVID-19 is a cause of real physical loss and damage to Covered Property.

45. COVID-19 is a physical substance.

46. COVID-19 remains stable and transmittable in aerosols for up to three hours, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.

20

51. COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy.

52. The COVID-19 pandemic renders the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use, which constitutes direct physical loss.

53. Plaintiff's loss of use of the Covered Property constitutes direct physical loss.

54. Plaintiff's restriction of use of the Covered Property constitutes direct physical loss.

55. The "Covid-19 Effect" also produces physical loss of and damage to the property.

56. Social anxiety over public health and society's change in perception that indoor establishments are unsafe due to COVID-19 creates "physical loss and damage" for purposes of commercial property coverage.

57. The public's and customers' change in perception is the functional equivalent of damage of a material nature or an alteration in physical composition.

65. These [Civil Authority] Orders and proclamations, as they relate to the closure of all "non-essential businesses" evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true in places such as Plaintiff's business where  the requisite contact and interaction causes a heightened risk of the property becoming contaminated by COVID-19.

66. Further, Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Governor of Pennsylvania's Order (and other local governmental orders) mandating that Plaintiff discontinue its primary use of the Covered Property. The Governor's Order, in and of itself, constitutes a Covered Cause of Loss within the meaning of the Policy.

95. Because people—employees, patients and others— frequent all areas of Plaintiff's property, there is an ever-present risk that the Covered Property

21

is contaminated and would continue to be contaminated if the business remained open to the public.

96. As a dental practice, Plaintiff operates in a close environment where patients, staff and doctors are directly next to each other, and are using tools, instruments and surfaces which must be free from contaminants.

97. Because business is conducted in an enclosed building, the Covered Property is more susceptible to being or becoming contaminated, as respiratory droplets are more likely to remain in the air or infect surfaces within the Covered Property for far longer or with significantly increased frequency as compared to facilities with open-air ventilation.

98. Dental procedures produce saliva particles which aerosolize, meaning they can become fine and hang in the air for extended periods of time.

99. Plaintiff's practice is highly susceptible to contamination and damage.

100. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the employees and patients require them to interact in close proximity to the property and to one another.

101. The virus is physically impacting the Covered Property. Any effort by the Defendants to deny the reality that the virus has caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

It is crucial to consider the entirety of the allegations, as plead- not as construed or ignored by opposition. *Phillips*, 515 F.3d at 231. Plaintiff's property, as alleged, was physically rendered unusable for a period of time, and physically incapable of performing its essential function- elective procedures. *Wakefern*, 968 A.2d at 734; *Gregory Packaging*, 2004 WL 6675934 at *6. Taking the allegations made in

Plaintiff's complaint as true, Plaintiff successfully plead a claim for which business income loss and civil authority coverage must be provided.

### E.   RECENT COVID-19 BUSINESS INCOME LOSS CASES HAVE DENIED MOTIONS TO DISMISS.

In *Optical Services USA/JCI et. al v. Franklin Mutual Insurance Company*, the Superior Court of New Jersey, Bergen County, recently denied the insurer's Motion to Dismiss which raised arguments similar to those raised by Defendant. Court number BER-L-3681-20, (N.J. Superior Court, Bergen County, August 13, 2020. (Transcript and Order attached at <u>Exhibit C</u>). The court reasoned:  "Since the term "physical" can mean more than material alteration or damage, it is incumbent on the insurer to clearly and specifically rule out coverage in the circumstances where it was not to be provided." *Id.* at 28 (*citing* , *Wakefern*, 406 N.J.Super. at 542). "Plaintiff should be permitted to engage in issue-oriented discovery and also be permitted to amend its complaint accordingly prior to an adjudication on the merits of any policy language. Such a motion is premature at best."  *Id.* at 26.

The Pennsylvania Court of Common Pleas, Philadelphia County, similarly recently overruled a defendant insurer's objection in a COVID-19 business income loss case on the basis of legal insufficiency of the complaint (demurrer). The Court reasoned that "[a]t this very early stage, it would be premature for this court to resolve the factual determinations put forth by defendants to dismiss plaintiff's claims. Taking the factual allegations made in plaintiff's complaint as true, as this

court must at this time, plaintiff has successfully plead to survive this stage of the proceedings." *Ridley Park Fitness, LLC v. Philadelphia Indemnity Insurance Company*, Case ID 200501093 (Pa. Ct. Com. Pl. Phila. August 31, 2020)(Order attached at <u>Exhibit D</u>).

## F. RECENT COVID-19 BUSINESS INCOME LOSS CASES ARE NON-PRECEDENTIAL AND DISTINGUISHABLE

Defendants' Brief spent considerable time addressing other opinions, opinions which are unpublished and lack precedential value. Simply put, these holdings are not analogous, they are not binding precedent[7] and they are distinguishable from the allegations raised in Plaintiff's Complaint.

In *Mudpie, Inc. v. Travelers Casualty Ins. Co. of America*, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) cited by Defendant, Travelers contended that there was no coverage because Mudpie did not suffer a "direct physical loss or damage" to property. The court found that Mudpie failed to establish a "direct physical loss of property because, unlike the instant case, Mudpie's complaint did not allege physical force which induced a detrimental change in the property's capability. More importantly, the court rejected the key argument that most insurers make in opposing coverage for losses associated with COVID-19—the argument that there must be "'a

---

[7] (See *Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F. Supp. 2d 339, 351 (D. Md. 2003)("Of course, no decision of a district court judge is technically binding on another district court judge, even within the same district.")).

distinct, demonstrable, physical alteration of the property' or 'a physical change in the condition of the property, i.e., it must have been "damaged" within the common understanding of that term.'" *Id.* at *3. The court disagreed with "Travelers's broad conception of the language 'direct physical loss of' property." *Id.* Instead, the court found that "the language of this provision, alone, does not require a 'physical alteration of the property' or 'a physical change in the condition of the property.'" *Id.*

In *Rose's 1, LLC v. Erie Ins. Exch.*, the court's decision was based on ordinary rules of contract interpretation, without consideration of whether the terms were ambiguous. 2020 D.C. Super. LEXIS 10, *1. Unlike the Complaint of Plaintiff, it does not appear that Rose's 1 alleged that the policy was ambiguous. (Compare Plaintiff's Complaint ¶¶33-42). This is a critical distinction. Terms of an insurance contract are ambiguous if there is more than one reasonable definition. *Wakefern Food Corp.*, 406 N.J. Super. at 541. Ambiguous terms must be interpreted in favor of coverage. The opinion in *Rose's 1* also did not address the reasonable expectations of the insured. (cf. *Sparks v. St. Paul Insurance Co.,* 100 N.J. 325, 495 A.2d 406 (1985)(a clear policy exclusion which did not "conform to the objectively reasonable expectations of the insured" and which was "violative of the public policy of [New Jersey]" could be construed in a manner which varied from its plain terms). *Rose's 1* has no relevance here.

25

*Diesel Barbershop, LLC v. State Farm Lloyds,* is similarly distinguishable. 2020 U.S. Dist. LEXIS 147276, at *6 and *13 (W.D. Tex. Aug. 13, 2020). The plaintiff in *Diesel Barbershop* never alleged that the words "loss" and/or "damage" were ambiguous or had more than one potential meaning. (*See Diesel Barbershop* Complaint at <u>Exhibit E</u>). In *Turek Enters, Inc. v. State Farm Mut. Auto. Ins. Co.*, 20-11655, 2020 WL 5258484 (E.D. Mich. Sept 3, 2020), the plaintiff similarly did not allege that the terms "loss of" and "damage to" were ambiguous. (See *Turek* Complaint at <u>Exhibit F</u>). Thus, the court in these cases did not engage in a critical analysis of the meanings of loss verses damage to determine if these terms should be construed in favor of coverage as the Court should here.

In *Gavrilides Mgmt. Co. v. Michigan Ins. Co*., relied on by Defendant, "[t]here [was] no allegation of any kind that the property in question has in any way been damaged, lost or anything of the sort." Case No. 20-258-CB-C30, at 4-5 (Ingham Cty., Mich. Cir. Ct. July 1, 2020). Further, unlike the New Jersey civil authority orders, according to Michigan Insurance Company's counsel's representation in the transcript, there was nothing in the civil authority order that prevented access to the plaintiff's properties. *Id*. at 7.

In *Martinez DMD P.A. v. Allied Insur. Co. of America*, the court stated that the dental practice's argument failed because the loss or damage asserted was not due to a "Covered Cause of Loss." 20-CV-00401, 2020 WL 5240218 (M.D. Fl.

Sept. 2, 2020).   Unlike Plaintiff's Complaint, the *Martinez* complaint supplied woefully bare allegations to explain the loss of or damage to the property and why it would be covered.   (See Complaint and Opinion at Exhibit G).   Further, and another critical distinction,  *Martinez* did not allege that the policy's use of "loss" and "damage" was ambiguous. (Compare Plaintiff's Complaint ¶¶32-42). *Martinez's* complaint failed to allege any basis for the court to determine the virus exclusion was invalid.  Finally, the court noted that *Martinez's* (4 page) response to the motion to dismiss "offered no opposition to the arguments asserted by Allied."[8] *Id.* at *1,*fn*.2.   Unlike the *Martinez* Complaint, Plaintiff's Complaint explains the basis for coverage under the business income loss and civil authority coverage forms, and Plaintiff's Complaint explains why the virus exclusion should be invalid. The allegations raised by Plaintiff's Complaint are categorily distinguishable from the threadbare complaint which was dismissed in *Martinez*.

In *10E LLC v. Travelers Indem. Co of Conn.*,  the plaintiff alleged that in-person dining restrictions interfered with the use or value of its property.  2020 WL 5359653 at *13 (C.D. Cal. Sept. 2, 2020).  Unlike Plaintiff, *10E LLC* did not allege that the restrictions caused direct physical loss or damage.  In *Malaube, LLC v.*

---

[8] "*Martinez's* argument is encapsulated simply in a summary at the conclusion: 'Here the Defendant hasn't established beyond a doubt that a breach of contract nor declaratory action should be litigated. The Plaintiff asserts that these matters are well plead and therefore the Defendant's Motion should be denied.'" *Id.* at *1,*fn*.2

*Greenwich Ins. Co.*, No. 20-22615-Civ, 2020 U.S. Dist. LEXIS 156027(S.D. Fla. Aug. 26, 2020), also unlike the present case, the plaintiff similarly did not allege any physical harm. (See *Malaube* Complaint at <u>Exhibit H</u>). It was additionally apparent in *Malaube, LLC*, that Florida and the 11th Circuit precedent did not view loss of use in as expansive a manner as the court did in *Port Authority of N.Y. and N.J.*, 311 F.3d at 236 and similar Third Circuit and New Jersey decisions.

Finally, Defendant will undoubtedly rely on the decision in *Rhonda Hill Wilson, Esquire et. al. v. Hartford Casualty Insurance Company et. al.*, No. 2:20-cv-03384 (E.D.PA., Sept. 30, 2020) in its reply to this opposition. *Rhonda Hill Wilson, Esquire's* Complaint and the Opinion are attached hereto as <u>Exhibit I</u>. This case is distinguishable.

In *Rhonda Hill Wilson, Esquire,* the Court granted the insurer's motion to dismiss based on the virus exclusion in the policy. However, unlike Plaintiff here, **Rhonda Hill Wilson, Esquire never even remotely addressed the virus exclusion in her Complaint**. *Id.* at p. 18. The Court noted: "Plaintiffs explicitly allege that their losses are caused by the Coronavirus, and yet do not reference this exclusion or dispute that Coronavirus is a virus." *Id.* at 18. Consequently, the Court had no reason to consider whether the virus exclusion applies to "expenses" (which it does not by its plain language as addressed *infra*). The Court had no reason to determine if the virus exclusion was ambiguous. The Court had no reason to consider whether

the doctrine of regulatory estopped precluded the defendant from enforcing the exclusion. Comparison of *Rhonda Hill Wilson, Esquire*'s Complaint and the Plaintiff's Complaint at issue make clear how very distinguishable the allegations at issue are.  Here, the Court must at a minimum consider the allegations raised in Plaintiff's Complaint, which were not raised or considered in *Rhonda Hill Wilson, Esquire.*

In any motion to dismiss, it is essential for the Court to consider the entirety of the facts alleged. By the same token, before accepting the general language of another court's decision on a similar case, the Court mut look at the entirety of the allegations the other court considered. As demonstrated above, the Plaintiff here has alleged much more than the plaintiffs in the cases cited by Defendant. The pleadings were deficient, and therefore the complaints were dismissed. In the instant case, Plaintiff has alleged all that is necessary to survive this motion.

### G. IF THE COURT INTERPRETS THE BUSINESS INCOME COVERAGE FORMS IN THE MANNER SUGGESTED BY DEFENDANT, THE COVERAGE FOR EXPENSES WOULD BE ILLUSORY

As discussed above, the policy affords coverage for "Business Income," and the policy defines that term to include two things: (1) lost net business income, and (2) "continuing normal operating expenses." Ex. A(1), Form MP T1 02 02 05, Section I.A.3.a.(1). Plugging each part of the definition into the insuring agreement, the policy reads as follow:

(1)  We will pay the actual loss of profits you sustain due to the necessary suspension of your operations and

(2)  We will pay the actual loss of "continuing normal operating expenses" you sustain due to the necessary suspension of your operations.

The language of the second coverage is nonsensical. Continuing expenses are never owed because of ("due to") a suspension of operations. They are owed despite a suspension of operations. For example, monthly rent that an insured must pay is never owed because of a suspension of operations.  The monthly rent must be paid despite a suspension of operations. Moreover, not only is the policy language nonsensical, but if the "loss of" operating expenses "due to a suspension of operations" requirement were enforced as written, the coverage for operating expenses would be illusory.

## H. THE "VIRUS EXCLUSION" DOES NOT APPLY TO CLAIMS FOR EXPENSES

By its very terms, the virus exclusion in the policy only applies to "loss or damage" and not expenses.

B. Exclusions

1. <u>We will not pay for **loss or damage**</u> caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

30

j. Virus Or Bacteria
    (1)  Any   virus,   bacterium   or   other microorganism that induces or is capable of inducing physical distress, illness or disease.

Ex. A(1), Form BP 00 03 07 13, Section I.B.1.j. p. 20 of 53 [emphasis added].

The Business Income, Civil Authority and Extra Expense coverage forms specifically refer to recovery under the policy for "expenses" as distinct from loss of income.  For example, under the Business income coverage form:

b)  We will only pay for **loss** of Business Income that you sustain during the" period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll **expenses** for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations coverage form.

(c) Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

Ex. A(1), Form BP 00 03 07 13, Section I.A.5.f.(1)(b)-(c), p. 6-7 of 53 *[emphasis added]*

31

The business income coverage form goes on to specifically define "payroll expenses." (<u>Ex. A(1)</u>, Section I.A.5.f.(1)(d), p.7 of 53). Clearly a "loss of business income" is a loss of profits, calculated after expenses are deducted. Additional recovery exists under the policy for the expenses themselves, a separate item from loss of income.

In fact, throughout the policy, "loss", "damage" and "expense" are separate items. For example, under "Debris Removal" coverage form (<u>Ex. A(1)</u>, p.3 of 53), the policy provides for payment of direct physical loss <u>plus</u> debris removal expense.:

> Subject to the exceptions in Paragraph (4), the following provisions apply:
>
> (a) The most that <u>we will pay for total of direct physical loss damage plus debris removal expense</u> is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.
>
> <u>Ex. A(1)</u>, Form BP 00 03 07 13, Section I.A.5.a.(3)(a)., p. 3 of 53.

Under the Extra Expense coverage form (<u>Ex. A(1)</u>, p.8 of 53), the policy says the insured can recover for expenses caused by loss or damage.:

> g. Extra Expense
> (1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a

> vehicle, the described premises include the area within 100 feet of such premises.
>
> Ex. A(1), Form BP 00 03 07 13, Section I.A.5.g., p. 8 of 53.

The Interruption of Computer Operations coverage form provides coverage for "loss sustained <u>and</u> expense incurred."

> (3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations **for all loss sustained and expense incurred** in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations…
>
> Ex. A(1), Form BP 00 03 07 13, Section I.A.5.q.(3)., p. 13 of 53.

The policy also provides coverage for "expenses" and not "loss or damage" in the Pollution Clean-up and Removal coverage form (<u>Ex. A(1)</u>, Section I.A.5.h., p. 8 of 53), and  the Forgery or Alteration coverage (<u>Ex. A(1)</u>, Section I.A.5.k., p. 9 of 53) (where the insurer will pay for the <u>loss</u> caused by the forgery but also legal <u>expenses</u>). "Expense" is treated differently from "loss" and "damage" in many other places in the policy.

Because the virus exclusion only excludes coverage for "loss or damage" and does not exclude coverage for "expense", the exclusion does not apply to the expenses incurred and covered under the policy due to the suspension of operations related to both the damage caused by the presence of the virus or the suspension of

operations caused by the civil authority orders. Had the Defendant intended for the exclusion to apply to "expense" coverage, it would have said so in the policy.

Other insurance policies long in existence and surely known to Defendant have been this specific in drafting their virus exclusion. The American Association of Insurance Services, an industry group that drafts policy provisions for adoption by insurers, has since 2006 promoted a virus exclusion which says:

> Virus or Bacteria -
> "We" do not pay for <u>loss, cost, or expense</u> caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.[9]

The word "expense" as used in this exclusion dovetails with the use of the word "expense" throughout the standard policy form. Many insurance companies use this exact language. Defendant does not. The only conclusion is that the virus exclusion in the policy in this case does not exclude claims for expenses. Therefore, the motion to dismiss should be denied.

---

[9] https://www.insurancejournal.com/news/national/2006/11/07/74032.htm. (Last accessed August 18, 2020). The American Association of Insurance Services is a national advisory organization that develops policy forms and rating information used by more than 600 property and casualty insurance companies throughout the U.S.

## I. THE DEFENDANT SHOULD BE ESTOPPED FROM ENFORCING THE VIRUS EXCLUSION BECAUSE OF MISREPRESENTATIONS TO THE PENNSYLVANIA INSURANCE REGULATOR AND THEIR INSUREDS

The complaint alleges Defendant made material misrepresentations to both Pennsylvania insurance regulators and its insureds. Such conduct should, under Pennsylvania public policy, estop Defendant from enforcing the virus exclusion. "A plaintiff must set forth two elements to prove regulatory estoppel: (1) a party made a statement to a regulatory agency; and (2) afterward, the party took a position opposite to the one presented to the regulatory agency." *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008)

Regulatory estoppel is firmly rooted in Pennsylvania law based upon the Pennsylvania Supreme Court's decision in *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001). The doctrine of regulatory estoppel is a form of judicial estoppel. *Id*. at 1192. "Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by adopting whatever position suits the moment." *Id*. at 1192. "Unlike collateral estoppel or res judicata, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals." Regulatory estoppel prohibits parties from switching legal positions to suit their own ends. *Id.*

In *Sunbeam*, the Pennsylvania Supreme Court reversed the Superior Court's grant of preliminary objections in the nature of a demurrer instructing the trial court to apply the doctrine of regulatory estoppel.[10] The Court based its decision on the following allegations from the plaintiffs' complaint:

> [I]n 1970 the insurance industry, including the defendant insurers, submitted to the Pennsylvania insurance department a memorandum which asserted that the disputed language—excluding coverage for pollution unless it was "sudden and accidental"—would not result in any significant decrease in coverage. The complaint alleged, moreover, that the insurance department relied on the industry's representation when it approved the disputed language for inclusion in standard comprehensive general liability policies without a reduction in premiums to balance a reduction in coverage.

*Id.* at 1192. The Supreme Court of Pennsylvania reasoned that whether or not the lower court regarded proof of the insurance department's reliance on the insurance industry's memorandum as likely or probable, the fact remained that the reliance was properly pleaded. *Id.* at 1192. In evaluating objections in the nature of demurrer, properly pleaded facts are deemed to be admitted. *Id.* The Court concluded: "having represented to the insurance department, a regulatory agency, that the new language in the 1970 policies—'sudden and accidental'—did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders." *Id.* at 1192–93.

---

[10] In Pennsylvania, "[p]reliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Haun v. Cmty. Health Sys., Inc.*, 14 A.3d 120, 123 (Pa. Super. Ct. 2011) (citation and quotations omitted).

Here, Plaintiff specifically alleged that the ISO and AAIS, on behalf of insurers, mislead state insurance regulators in seeking the adoption of the Virus Exclusion.   Ex. A(1), ¶79-93. These groups represented that property policies had not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents.   Ex. A(1), ¶83.   In doing so, and in securing approval for the adoption of the Virus Exclusion, Defendant effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.  Ex. A(1), ¶88. In as much, Plaintiff's regulatory estoppel claim is properly plead.

In *Hussey Copper, Ltd. v. Royal Ins. Co. of Am.,* the plaintiff issued a regulatory estoppel claim. 567 F. Supp. 2d 774, 786 (W.D. Pa. 2008).  The plaintiff submitted articles indicating that assurances were made to state insurance regulators concerning pollution exclusions. *Id.* (referencing   J.A. MacDonald, Decades of Deceit: The Insurance Industry Incursion into the Regulatory and Judicial Systems, 7 Coverage 9 (Nov., Dec. 1997) ("the MacDonald article") ("In a March 11, 1985 letter to the Commonwealth ..., [the Insurance Services Office, or] ISO ... reaffirmed that coverage is not excluded under the 'absolute' pollution exclusion for 'products' and 'completed operations' claims.").  Although the plaintiff did not yet obtain admissible evidence for the estoppel claim, the plaintiff requested discovery to further develop the record. Over the insurer's objection, the court reasoned that a complete rejection of the theory was too harsh a result.  Accordingly, the Court permitted discovery regarding plaintiff's regulatory estoppel theory, focusing on what was said to state regulators in getting an insurance exclusion approved. *Id.*

The ISO Circular Plaintiff relies on in the Amended Complaint highlights that Insurers should be precluded from using the Virus Exclusion because of misrepresentations they made to regulators. *See* https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (last visited September 28, 2020) ("Having falsely claimed that virus and contamination exclusions were already in effect, that they were requesting regulatory approval for a mere clarification in the form, and that therefore no premium reduction was warranted, the insurance industry should now be prevented from relying on these exclusions to bar coverage for COVID 19 claims.").[11]

Like in *Hussey,* discovery by Plaintiff of what Defendant and/or ISO said to Pennsylvania regulators in getting the Virus Exclusion approved should be allowed. As the *Hussey* Court aptly noted: "[o]nce the facts come in, counsel may raise anew their arguments for and against coverage given the regulatory estoppel doctrine. At that time, the parties and court will have greater context within which to conduct their analyses." *Hussey Copper, Ltd.*, 567 F. Supp. 2d at 787. Plaintiff's Amended Complaint should not be dismissed. At a minimum, Plaintiff should be permitted to pursue discovery on the issue of regulatory estoppel and to amend Plaintiff's Complaint.

---

[11] In a Rule 12(b)(6) motion to dismiss the court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis v. Wells Fargo,* 824 F.3d 333, 341 (3d Cir. 2016)(citation omitted). The article Plaintiff specifically references can be examined because Plaintiff relies upon it in part for its regulatory estoppel allegations.

### H. The Virus Exclusion is Not Clear or Unambiguous

Contrary to Defendant's suggestion, not every court has found virus exclusions to be clear and unambiguous. In fact, in *Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company, LTD*, Case No. 6:20-cv-1174-Orl22EJK (M.D.FL. September 24, 2020), the Court analyzed a Sentinel Insurance policy which used the standard ISO language at issue here. See Opinion at <u>Exhibit J</u>. The Court concluded that "it is not clear that the plain language of the policy unambiguously and necessarily excludes Plaintiff's losses." *Id.* at 6. The Court added:

> "Denying coverage for losses stemming from COVID-19, …does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses." *Id.* at 7

The Court was unmoved by cases cited by the defendants. None of the case "dealt with the unique circumstances of the effect COVID-19 has had on our society", a distinction the court considered significant. *Id.* at 7. Without binding case law on the issue of the effect of COVID-19 on insurance contracts' virus exclusions, the Court found that the Plaintiff stated a plausible claim. *Id.* at 7. Defendant's motion was denied, as it should be here.

39

## IV.   CONCLUSION

For the foregoing reasons, the Defendant's Motion should be denied in its entirety, or alternatively, denied without prejudice to allow Plaintiff to file an Amended Complaint to cure any deficiencies identified by the Court.

Respectfully submitted,

**ANAPOL WEISS**

Dated: October 2, 2020

By: _____
Sol H. Weiss, Esquire
James R. Ronca, Esquire
Gregory S. Spizer, Esquire
Ryan D. Hurd, Esquire
Paola Pearson, Esquire
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
sweiss@anapolweiss.com
jronca@anapolweiss.com
gspizer@anapolweiss.com
rhurd@anapolweiss.com
ppearson@anapolweiss.com

Counsel for Plaintiff