**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN HANDEL D.M.D., P.C.,** | : | |
| *Plaintiff,* | : | |
| v. | : | **Case No. 2:20-cv-03198** |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| *Defendant.* | : | |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S
<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT</u>**

Douglas Y. Christian (PA Id. No. 41934)
Terrence M. Grugan (PA Id. No. 307211)
Brittany M. Wilson (PA Id. No. 313912)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215-665-8500
F: 215-864-8999

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198

*Attorneys for Defendant, Allstate Insurance
Company*

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 1

    A. The Policy Language is Neither Vague Nor Ambiguous. ..................................... 1

    B. Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because It Has Not Pled Facts Establishing "Direct Physical Loss or Damage" to Property ............................................................................................. 4

    C. Plaintiff Is Not Entitled to Civil Authority Coverage. ......................................... 9

    D. The Virus Exclusion Bars Plaintiff's Claim. ..................................................... 11

        1. The Virus Exclusion Is Unambiguous. ................................................... 11

        2. The Virus Exclusion Bars Recovery for "Expenses." ............................ 12

        3. Allstate Is Not Estopped from Enforcing the Virus Exclusion. .............. 12

III. CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
No. 20-cv-04418, 2020 WL 5359653 (C.D. Cal. Sept. 9, 2020) ...............................................4

*Advent Home Mortg. Corp. v. Hartford Ins. Co.*,
No. 06-1582, 2006 WL 7121792 (E.D. Pa. Aug. 14, 2006) ...............................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................1, 11, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................13

*Burns v. Roll-Up Door Installation, Inc.*,
Civ. No. 06-2866, 2006 WL 8460174 (E.D. Pa. Oct. 19, 2006)...............................................7

*Da Cunha v Standard Fire Ins. Co./Aetna Flood Ins. Program*,
129 F.3d 581 (11th Cir. 1997) ...............................................................................................2

*Diesel Barbershop, LLC v. State Farm Lloyds*,
No. 20-CV-461, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)........................................3, 5

*Fireman's Fund Ins. Co. v. Cmty. Coffee Co.*,
No. 06-2806, 2007 WL 1076790 (E.D. La. Apr. 9, 2007)........................................8, 9

*Friends of Danny DeVito v. Wolf*,
227 A.3d 872 (Pa. 2020), *cert. denied*, 2020 WL 5882242 (Pa. Oct. 5, 2020) .......................10

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
No. 20-258-CB (Ingham County, MI Circuit Ct.) ................................................................3, 5

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
No. 20-CV-2939 (N.D. Ga. Oct. 6, 2020).......................................................................1, 2, 4

*Horizon Dive Adventures, Inc. v. Tokio Marine Specialty Ins. Co.*,
No. 20-CA-159-P (Monroe Cnty., Fla. Oct. 8, 2020) .................................................................5

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*,
No. 20-cv-1605-T-30 (M.D. Fla. Sept. 28, 2020).......................................................................4

*Mace Marine, Inc. v. Tokio Marine Specialty Ins. Co.*,
No. 20-CA-210-P (Monroe Cnty., Fla. Oct. 8, 2020) .................................................................5

*Malaube, LLC v. Greenwich Ins. Co.*,
No. 20-cv-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ...........................................2, 4

*Mama Jo's Inc. v. Sparta Ins. Co.*,
No. 18-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) ...........................................2, 4, 7

*Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indem. Co.*,
No. 20-cv-04423 (C.D. Ca. Oct. 2, 2020) ...........................................................................5, 9

*Matzner v. Seaco, Ins. Co.*,
No. Civ.A. 96-0498-B, 1998 WL 566658 (Mass. Super. Ct. Aug. 12, 1998) .........................6

*Mortar and Pestle Corp. v. Atain Specialty Ins. Co.*,
No. 20-cv-03461-MMC (N.D. Cal. Sept. 11, 2020) ...............................................................5

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
No. 20-CV-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ..........................................5

*Murray v. State Farm and Cas. Co.*,
509 S.E.2d 1 (W. Va. 1998)....................................................................................................6

*Narricot Indus., Inc. v. Fireman's Fund. Ins. Co.*,
No. Civ. A 01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ...................................10

*Optical Services USA/JCI et al. v. Franklin Mut. Ins. Co.*,
No. BER-L-3681-20 (N.J. Super. Ct. Law Div. Aug. 13, 2020) ..............................................3

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
No. 20-cv-222 (S.D. Iowa Sept. 29, 2020) ............................................................................5

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)..........................................4, 9

*Phila. Parking Auth. v. Fed. Ins. Co.*,
385 F. Supp. 2d 280 (S.D.N.Y. 2005)....................................................................................4

*Plan Check Downtown III, LLC v. AmGuard Ins. Co. et al.*,
No. CV 20-6954, 2020 WL 5742712 (C.D. Cal. Sept. 16, 2020)...........................................5

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002)...................................................................................................7

*Ridley Park Fitness, LLC v. Phil. Indem. Ins. Co.*,
No. 200501093 (Pa. Ct. Com. Pl. Phila. Aug. 31, 2020)......................................................3

*Rose's 1, LLC v. Erie Ins. Exchange*,
No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 06, 2020).......................5

*Rubin v. State Farm. Mut. Auto. Ins. Co.*,
  No. 10-cv-1651, 2011 WL 61175 (W.D. Pa. Jan. 7, 2011) .....................................................7

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  No. 20-cv-2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020)...................................2, 5, 8, 9

*Selko v. Home Ins. Co.*,
  139 F.3d 146 (3d Cir. 1998)..............................................................................................2

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*,
  563 N.W. 2d 296 (Minn. App. 1997).....................................................................................6

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*,
  530 F. Supp. 2d 706 (E.D. Pa. 2008) .............................................................................12, 13

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
  No. 20-cv-3311-VEC (S.D.N.Y.) .........................................................................................5

*Strawn v. Lebanon Cnty. Correctional Facility*,
  No. 18-cv-00872, 2019 WL 1349777 (M.D. Pa. March 26, 2019) ..........................................7

*Studio 417, Inc. v. The Cincinnati Ins. Co.*,
  No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) .........................................10

*Takeda Pharm. U.S.A., Inc. v. Spireas*,
  400 F. Supp. 3d 185 (E.D. Pa. 2019) ..................................................................................13

*The Inns by The Sea v. Cal. Mutual Ins. Co.*,
  No. 20-CV-001274 (Cal. Super. Ct., Aug. 4, 2020) ...............................................................5

*Transamerican Office Furniture v. Travelers Prop. & Cas.*,
  222 F. Supp. 2d 689 (E.D. Pa. 2002) ...........................................................................1, 2, 13

*Turek Enters., Inc., v. State Farm Mut. Auto. Ins. Co.*,
  et. al, No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)...................................3, 5

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
  439 F. 3d 128 (2d Cir. 2006)..............................................................................................10

*Universal Image Prods., Inc. v. Federal Ins. Co.*,
  475 F. App'x 569 (6th Cir. 2012) .........................................................................................7

*Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company, LTD*,
  Case No. 20-cv-1174 (M.D. FL. September 24, 2020)..........................................................11

*Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*,
  No. 20-cv-1348-D (N.D. Tex. Oct. 10, 2020)........................................................................5

*Wilson v. Hartford Cas. Co.*,
    No. 20-cv-03384 (E.D. Pa. Sept. 30, 2020) ............................................................................11

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ....................................................................................................................13, 14

## I.      INTRODUCTION

Plaintiff cannot manufacture ambiguity where none exists. To trigger coverage, the Policy[1] clearly requires "direct physical loss or damage" to property.  Plaintiff has not--and cannot--plead any such physical loss or damage.  Indeed, as the ever-growing body of case law on this issue indicates, economic losses arising from civil authority orders that reduce Plaintiff's operations on the Covered Property cannot constitute "physical loss or damage" to property.  *See e.g. Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-CV-2939 (N.D. Ga. Oct. 6, 2020), Opinion and Order, a copy of which is attached hereto as Exhibit K ("Ex. K"), at 8 (dismissing COVID-19 claim for failure to plead "direct physical loss of or damage to" property where insured failed to allege that "a change in the insured property" caused alleged loss).

Independently, the unambiguous Virus Exclusion in the Policy bars Plaintiff's claim.  The Court may enforce that exclusion as a matter of law. *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002). Plaintiff has not alleged any facts that would vitiate the Virus Exclusion under regulatory estoppel or any other legal doctrine, and is not entitled to engage in a fishing expedition hoping to discovery facts that will help it evade the plain language in the Policy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009) (plaintiff cannot survive motion to dismiss by asserting "sheer possibility" of claim).

Thus, for the reasons set forth in Allstate's Motion to Dismiss and herein, Plaintiff's claims should be dismissed.

## II.      ARGUMENT

### A.      The Policy Language is Neither Vague Nor Ambiguous.

Plaintiff contends that the Business Income, Extra Expense, and Civil Authority Coverages

---

[1] All capitalized terms have the meaning set forth in Allstate's Motion to Dismiss.

in the Policy are susceptible to multiple interpretations.  Plaintiff thus argues that its interpretation should prevail.  (*See* ECF No. 17 at 5-7).

The Policy language, like that of any other contract, must be interpreted according to ordinary principles of contract law to "give effect to the clear policy language and avoid torturing the language to create ambiguities."  *Transamerican Office Furniture,* 222 F. Supp. 2d at 691 ("Since insurance policies are considered contracts and contract interpretation is generally a question of law, we apply ordinary principles of contract law.") (relying on *Da Cunha v Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584-85 (11th Cir. 1997); *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).)  That the Policy does not specifically define "direct physical loss or damage" does not create ambiguity.  *See Advent Home Mortg. Corp. v. Hartford Ins. Co.*, No. 06-1582, 2006 WL 7121792, at *4 (E.D. Pa. Aug. 14, 2006) ("Where…a term is not defined in an insurance policy but possesses a clear legal or common meaning that may be supplied by a court, the contract is not ambiguous.") (quoting *Cnty. of Erie, Pa. v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 163 (3d Cir. 1997).

For that reason, courts throughout the country have consistently interpreted similar policy language as a matter of law, and without regarding to the insureds' alternative interpretations.  *See e.g., Malaube, LLC v. Greenwich Ins. Co.*, No. 20-cv-22615, 2020 WL 5051581, at *3, *5, *7 (S.D. Fla. Aug. 26, 2020); *Henry's La. Grill,* Ex. K, at 8  (interpreting "direct physical loss of or damage to" property to require "a change in the insured property resulting from an external event rendering the insured property, initially in satisfactory condition, unsatisfactory."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20-cv-2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) (finding "direct physical loss" unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage); *Mama Jo's Inc. v. Sparta Ins. Co*., No. 18-

12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (finding as matter of law that plain meaning of "direct physical loss" required that physical damage be actual).[2]

Indeed, Plaintiff fails to cite a single federal decision in which a court has held that the phrase "direct physical loss of or damage to" property is ambiguous in the context of a COVID-19 business interruption claim.

Contrary to Plaintiff's argument, *Optical Services USA/JCI et al. v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Ct. Law Div. Aug. 13, 2020), did not hold that physical loss or damage is ambiguous, or that civil authority orders alone constitute physical loss or damage to property.  (*See* ECF No. 17 at 23.)  To the contrary, the court simply refused to interpret or define the phrase "physical loss or damage" under New Jersey's more lenient pleading standards, finding only that the insured had made an "interesting argument." (*See* ECF No. 17-5, Transcript at 29). The Court recited both parties' legal positions and then declined to decide between them.

Plaintiff similarly cites *Ridley Park Fitness, LLC v. Phil. Indem. Ins. Co.*, No. 200501093 (Pa. Ct. Com. Pl. Phila. Aug. 31, 2020).  (*See* ECF No. 17 at 23-24.)  Although the state court in *Ridley Park* declined to dismiss the insured's complaint, it did so in a summary, two-sentence order (currently the subject of a motion for reconsideration) that did not identify any factual issues nor analyze or interpret the insured's policy. (*See* ECF No. 17-6).  That decision is therefore of no meaningful precedential value here.

For these reasons, the Policy is not ambiguous and should be interpreted in Allstate's favor

---

[2] *See also Diesel Barbershop, LLC v. State Farm Lloyds,* No. 20-CV-461, 2020 WL 4724305, at *6-7 (W.D. Tex. Aug. 13, 2020) (granting defendant's motion to dismiss because plaintiff did not allege coverage for its COVID-19 business losses under the insurance policy); *Gavrilides Mgmt. Co. v. Michigan Ins. Co*., No. 20-258-CB, (Ingham County, MI Circuit Ct.), Transcript of July 1, 2020 Hearing, ECF No. 16-3 (converting defendant's summary judgment motion to a motion to dismiss and granting defendant's motion because plaintiff had not alleged any physical harm..); *Turek Enters., Inc*., *v. State Farm Mut. Auto. Ins. Co.*, et. al, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (dismissing plaintiff's claims because plaintiff failed to allege any tangible damage under plaintiff's policy).

as matter of law.

**B.    Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because It Has Not Pled Facts Establishing "Direct Physical Loss or Damage" to Property.**

Both the Business Income and Extra Expense Coverages require Plaintiff to show "direct physical loss of or damage to property at the described premises."   (ECF No. 16-2 at DEF_00000064.)  Here, Plaintiff argues that its use of the Covered Property was limited to (though not prohibited from) performing emergency dental procedures, and that this limitation constitutes direct physical loss or damage.  (ECF No. 17 at 14.)

Courts throughout the country, however, have rejected Plaintiff's argument, holding that "an insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage."  *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 20-cv-04418, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 9, 2020) (dismissing the plaintiff's claims for business interruption and extra expense coverage on grounds that plaintiff had not suffered a direct physical loss or damage because the property was not damaged and plaintiff was not permanently dispossessed of the property); *see also Pappy's Barber Shops, Inc. v. v. Farmers Grp., Inc.,* No. 20-CV-907, 2020 WL 5500221, at *4-5 (S.D. Cal. Sept. 11, 2020) (rejecting the plaintiff's attempt to substitute temporary impaired use or diminished value for physical loss or damage); *Malaube, LLC*, 2020 WL 5051581, at *9 (finding that the policy contemplated "physical damage to the insured premises as opposed to loss of use of it"); *Mama Jo's Inc.*, 2020 WL 4782369, at *8 (requiring actual damage, not merely loss of use); *Henry's La. Grill,* Ex. K, at 8 (requiring physical change to property).[3]

---

[3] *See also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 286-89 (S.D.N.Y. 2005) (court found financial losses unrelated to physical loss or physical damage at the insured premises did not satisfy the policy's direct physical loss requirement because "the claimed loss… must be physical in nature"); *see also, Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London,*

No. 20-cv-1605-T-30, (M.D. Fla. Sept. 28, 2020), Order attached hereto as Exhibit L ("Ex. L"), at 7 (finding "actual, concrete damage is necessary"); *Diesel Barbershop, LLC,* 2020 WL 4724305, at *7 ("While there is no doubt that the COVID-19 crisis severely affected Plaintiff's business, [the insurer] cannot be held liable to pay business interruption insurance on these claims as there was no direct physical loss."); *Rose's 1, LLC v. Erie Ins. Exchange,* No. 2020 CA 002424 B, 2020 WL 4589206, at *3-4 (D.C. Super. Ct. Aug. 06, 2020) (granting insurer's motion for summary judgment against plaintiffs claim for COVID-19 related losses because "the mayor's orders did not have any effect on the material or tangible structure of the insurer properties"; and explaining that "in the context of property insurance, the term 'direct loss' implies some form of direct physical change to the insured property."); *Social Life Magazine, Inc. v. Sentinel Ins. Co.,* No. 20-cv-3311-VEC, (S.D.N.Y.), Transcript of May 14, 2020 Hearing, ECF No. 16-7, at 15 (finding plaintiff had no likelihood of success on merits of business interruption claim related to COVID-19 where plaintiff had not shown damage to property that caused loss); *Gavrilides Mgmt.,*Transcript, ECF 16-3 at 18-23 (granting summary disposition of business interruption claim in favor of insurer, without opportunity for leave to amend, arising from COVID-19 pandemic and finding "direct physical loss" "has to be something with material existence. . . . that alters the physical integrity of the property."); *Turek Enters.,* 2020 WL 5258484, at *5-8 (dismissing plaintiff's claims on grounds that "direct physical loss" requires "some tangible damage to Covered Property" and that inability to use the Covered Property due to civil authority orders issued in response to COVID-19 did not constitute such a loss); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,* No. 20-CV-03213, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) (dismissing complaint because Business Income and Extra Expense coverage did not extend to losses caused by inability to occupy storefront; and because there were no allegations of a physical force which "induced a detrimental change in the property's capabilities," there was no "direct physical loss of property" under the policy); *Plan Check Downtown III, LLC v. AmGuard Ins. Co. et al.,* No. CV 20-6954, 2020 WL 5742712, at *5-6 (C.D. Cal. Sept. 16, 2020) (attaching tentative ruling dismissing claims because complaint did not allege facts to show a tangible alteration and thus no "direct physical loss of or damage to property"); *Sandy Point Dental, PC,* 2020 WL 5630465, at *2 ("The critical policy language here—'direct physical loss'—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *Mortar and Pestle Corp. v. Atain Specialty Ins. Co.,* No. 20-cv-03461-MMC, (N.D. Cal. Sept. 11, 2020), Transcript and Order attached hereto as Exhibit M  ("Ex. M"), at 31 (plaintiff had alleged only "detrimental economic impact," not physical loss or damage); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.,* No. 20-cv-222 (S.D. Iowa Sept. 29, 2020), Order attached hereto as Exhibit N ("Ex. N")(dismissing claim alleging loss arising from government orders, finding no "physical" loss or damage); *The Inns by The Sea v. Cal. Mutual Ins. Co.,* No. 20-CV-001274 (Cal. Super. Ct., Aug. 4, 2020), Order granting Defendant's Demurrer, ECF No. 16-8, at 6 (sustaining a demurrer without leave to amend based on language of the policy, which included a requirement of direct physical loss); *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indem. Co.,* No. 20-cv-04423 (C.D. Ca. Oct. 2, 2020), Order attached as Exhibit O ("Ex. O"), at 8-9 (dismissing claim for lack of physical loss or damage and failure to allege loss of use or access); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.,* No. 20-cv-1348-D (N.D. Tex. Oct. 10, 2020), Order attached hereto as Exhibit P (" Ex. P"), at 2 (dismissing COVID-19 claim); *Mace Marine, Inc. v. Tokio Marine Specialty Ins. Co.,* No. 20-CA-210-P (Monroe Cnty., Fla. Oct. 8, 2020), Order attached hereto as Exhibit Q ("Ex. Q"), at 1 (dismissing COVID-19 claim for failure to plead "actual" damage to property); *Horizon Dive Adventures, Inc. v. Tokio Marine Specialty Ins. Co.,* No. 20-CA-159-P (Monroe Cnty., Fla. Oct. 8, 2020), Order attached hereto as Exhibit R ("Ex. R"), at 1 (dismissing COVID-19 claim for failure to plead "actual" damage to property).

The cases Plaintiff cites are inapposite.  For instance, in *Murray v. State Farm and Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998), some of the plaintiffs' residences had been damaged by a rockslide, while others homes faced the imminent threat that another rockslide (caused by an improperly cut rock face) would occur again in the immediate future.  The court noted that coverage required "that the property be damaged, not destroyed."  *Murray*, 509 S.E.2d at 17. Murray did not hold that economic damages arising from government restrictions on the type of business conducted at the insured premises constitute physical loss or damage.

In *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W. 2d 296, 300 (Minn. App. 1997), unlike here, the plaintiff alleged actual asbestos contamination that entirely prohibited use of the covered premises.  *See also Matzner v. Seaco, Ins. Co.*, No. Civ.A. 96-0498-B, 1998 WL 566658, at *1, *3 (Mass. Super. Ct. Aug. 12, 1998) (finding covered property was actually contaminated with carbon dioxide that required repair work, including removal of galvanized pipe from the chimney as well as that the chimney be lined and an exhaust fan installed).

Here, by contrast, Plaintiff alleges that government orders, rather than physical contamination, limited its ability to perform non-emergency dental procedures on the Covered Property.  (*See* First Am. Compl., ECF No. 14, ¶¶ 108-115; Prayer for Relief (a-b) (alleging loss attributable to closure orders).)  To the extent Plaintiff's Response Brief now vaguely asserts, for the first time, that the "presence of COVID-19 in and near the premises" deprived Plaintiff of the use of the property, Plaintiff's allegations fail.  (*See* ECF No. 17 at 9.)  First, Plaintiff's Response does not cite, and the Amended Complaint does not contain, any allegations regarding the "presence of COVID-19 in and near the premises."  (*See id.* at 20-22 (quoting paragraphs in Amended Complaint, none of which describes contamination causing loss or damage to physical property at Covered Property, or restricted use attributable to such loss or damage).  Unpled

6

statements in a Response Brief are insufficient. *See Strawn v. Lebanon Cnty. Correctional Facility*, No. 18-cv-00872, 2019 WL 1349777, at *1 n.4 (M.D. Pa. March 26, 2019) (court could "not consider after-the-fact allegations in determining the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), and [plaintiff] may not amend his complaint in a response brief."); *Burns v. Roll-Up Door Installation, Inc.*, Civ. No. 06-2866, 2006 WL 8460174, at *3 (E.D. Pa. Oct. 19, 2006) (refusing to consider allegations plaintiff asserted for the first time in his response brief).

Moreover, even if properly pled, Plaintiff's vague allegations could not establish direct physical loss because they do not identify what property was contaminated with COVID-19, which individuals present at the Covered Property were COVID-19 positive, how those individuals impacted the Covered Property (if at all), when the contamination occurred, or how the contamination impacted Plaintiff. Legal conclusions[4] and speculation regarding the presence--or future presence--of the virus will not do. *See Rubin v. State Farm. Mut. Auto. Ins. Co.*, No. 10-cv-1651, 2011 WL 61175, at *2 (W.D. Pa. Jan. 7, 2011) (The court "is not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citation and quotations omitted); *see also Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("[t]he mere presence of asbestos, *or the general threat of future damage from that presence*, lacks the distinct and demonstrable character necessary for first-party insurance coverage.") (emphasis added).[5]

---

[4] For instance, rather than citing specific factual allegations describing physical loss or damage, Plaintiff's Response Brief repeatedly cites to legal conclusions in the Complaint alleging that COVID-19 can establish, or has established physical loss or damage. (*See* ECF No. 17 at 20-21.) These conclusions are devoid of any facts specific to Plaintiff or the Covered Property.

[5] Even if Plaintiff had made such allegations, they would not trigger coverage because any impact to the Covered Property could be remedied by cleaning it. *See Mama Jo's Inc.*, 2020 WL 4782369, at *8 ("direct physical loss" requires actual change to property that requires repair or replacement, not merely cleaning); *Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 F. App'x 569, 573-74 (6th Cir. 2012) (finding that contamination could be cleaned and thus did not constitute physical damage). Moreover, Plaintiff has not alleged that the civil authority orders upon which it relies

And, even if loss of use of the Covered Property *could* constitute physical loss or damage sufficient to trigger coverage, Plaintiff's allegations conclusively establish that no such loss of use occurred here.  To the contrary, Plaintiff alleges that it was not prohibited from accessing or using the Covered Property. It was not even deprived of the use of the Covered Property as a dentist office.  It was merely limited to performing emergency procedures.  (ECF No. 17 at 14.)  A limitation on the *type* of services Plaintiff may offer does not constitute direct physical loss or damage to the Covered Property at which Plaintiff offers those services.  *See Sandy Point Dental, PC*, 2020 WL 5630465, at * 2 ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *see also infra*, 9-11 (regarding requirement that Plaintiff allege access was prohibited, not merely reduced).

Lastly, purely economic losses based on the public's reluctance to visit a dentist—what Plaintiff terms the "COVID -19 Effect"—cannot establish coverage.  Plaintiff's reliance on *Fireman's Fund Ins. Co. v. Cmty. Coffee Co.*, No. 06-2806, 2007 WL 1076790 (E.D. La. Apr. 9, 2007) is misplaced.  (*See* ECF No. 17 at 11-12.)  Specifically Plaintiff suggests that *Fireman's Fund* found that a "general perception or concern" regarding the condition of certain coffee product—the "Katrina Effect"—constituted physical damage.  *See id*.  To the contrary, the court simply held that the "loss of market exclusion," which the insurer argued barred the plaintiff's claim, did "not exclude coverage for diminution in value of insured property that is damaged." *Fireman's Fund*, 2007 WL 1076790 at *4.  Moreover, contrary to Plaintiff's argument, the court further found evidence that the coffee at issue was physically damaged due to prolonged exposure

---

prohibited access to the Covered Property specifically in response to the presence of COVID-19 on its premises or any nearby premises.

to water on the floor of the warehouse.  *Id*.  Thus, the court did not hold that the "Katrina Effect" alone could constitute physical damage.

### C. Plaintiff Is Not Entitled to Civil Authority Coverage.

The Civil Authority Coverage requires Plaintiff to establish that a direct physical loss prohibited access to the Covered Property "as a result of" and "in response to" damage to other property located less than one mile away from the Covered Property.  (Policy, ECF No. 16-2 at DEF_00000082.)  As discussed above, Plaintiff contends that government-issued orders prohibited it from performing non-emergency procedures at the Covered Premises.

First, as discussed above, this limitation on Plaintiff's business use does not constitute "direct physical loss."  *See supra*, 8.

Further, even if Plaintiff had alleged a physical loss, access to the Covered Property was not "prohibited" as a result of the actions of a civil authority.  (*See* Policy, ECF No. 16-2 at DEF_00000082 (requiring that order "prohibit" access to property to trigger coverage).)  To the contrary, the orders did not prohibit Plaintiff's staff or patients from accessing the Covered Property for emergency procedures.  (*See* ECF No. 17 at 14.); *see also Sandy Point Dental, PC*, 2020 WL 5630465, at *3 (finding complaint did not alleged that COVID-19 caused direct physical loss to other property and that "while coronavirus orders may have limited plaintiff's operations, no order issued in Illinois prohibits access to plaintiff's premises); *Pappy's Barber Shops,* 2020 WL 5500221, at *6 (finding that orders that merely prohibited business from operating, but did not prohibit access to physical premises, did not trigger civil authority coverage under substantially similar provision.); *Mark's Engine Company No. 28 Restaurant,* Order, Ex. O, at 7-8 (restrictions on in-person dining did not constitute total loss of use or access; to the contrary, despite government orders, insured always had "complete access" to property, though the type of services

it could provide on that property were restricted).  For this independent reason, Civil Authority Coverage does not apply.

Nevertheless, Plaintiff contends that *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020), *cert. denied*, 2020 WL 5882242 (Pa. Oct. 5, 2020), indicates that civil authority orders prohibited access to businesses in Pennsylvania for purposes of establishing Civil Authority Coverage here. (*See* ECF No. 17 at 14-15.)  *Friends of Danny DeVito* did no such thing.  Rather, that case simply concluded that the governor had the authority to "protect the lives, health, morals, comfort, and general welfare of the people."  227 A.3d at 896 (citation omitted).  The court did not conclude that Civil Authority Orders prohibited access to any insured premises, much less Plaintiff's.  Nor did it find that access to the Covered Property was prohibited, or that Plaintiff could not continue to perform certain dental procedures at the Covered Property.[6]

Lastly, Plaintiff relies on *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), in which the court declined to dismiss an insured's COVID-19 claim.  (*See* ECF No. 17 at 19-20.)  Unlike in the present case, however, *Studio 417* turned on the plaintiff's allegation that the subject property was actually contaminated and that the virus had physically "*attached to*" walls and surfaces.[7]  2020 WL 4692385 at *4 (emphasis added).

---

[6] Plaintiff also argues that *Narricot Indus., Inc. v. Fireman's Fund. Ins. Co.*, No. Civ. A 01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002), indicates that civil authority coverage is triggered by government orders issued in response to the threat of physical damage.  (ECF No. 17 at 16.) *Narricot* is inapplicable, however, because there, the government issued orders to prevent or alleviate the perils of a covered loss—physical property damage caused by hurricane and flood. Here, by contrast, the Civil Authority Orders were not issued to prevent or alleviate any direct physical loss at any property less than one mile from Plaintiff's.  As discussed above, the threat of COVID-19 infection to the general population does not constitute physical loss or damage.  The present case is more akin to *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F. 3d 128, 134-35 (2d Cir. 2006), in which the court found civil authority coverage was not available for airport closure ordered after September 2011 terrorist attacks even though nearby Pentagon was damaged, since "the government's … decision to halt operations at the Airport … was based on fears of future attacks" and not upon "damage to adjacent premises."

[7] Additionally, the policy at issue in *Studio 417*, unlike this Policy, did not include a virus exclusion.

Here, by contrast, Plaintiff does not allege that COVID-19, or anyone carrying the virus, was ever present at the Covered Property or any property less than a mile away.  It does not identify any surface or property to which COVID-19 "attached," much less allege that the contamination--and not civil authority orders themselves--prohibited access to the Covered Property.  For all these reasons, Civil Authority Coverage does not apply.

### D.    The Virus Exclusion Bars Plaintiff's Claim.

#### 1.    The Virus Exclusion Is Unambiguous.

The Virus Exclusion unequivocally excludes coverage related to any "loss or damage caused directly or indirectly by… any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (ECF No. 16-2, at DEF_00000090, DEF_00000093.)  It thus bars Plaintiff's claim. *See Wilson v. Hartford Cas. Co.*, No. 20-cv-03384 (E.D. Pa. Sept. 30, 2020), Memorandum, ECF No. 17-11, at 22 (dismissing Plaintiff's claims based on the virus exclusion with language similar to that at issue here).[8]

Nevertheless, Plaintiff argues that the Virus Exclusion is ambiguous, relying on *Urogynecology Specialist of Florida, LLC v. Sentinel Insurance Company, LTD*, Case No. 20-cv-1174 (M.D. FL. September 24, 2020). (*See* ECF No. 17 at 39)  That case, however, merely refused to enforce the virus exclusion because the parties had not submitted the entire policy for the court's consideration. (*See* ECF No. 17-12 at 6-7).  Here, by contrast, the Policy is attached to Allstate's Motion to Dismiss, (*see* ECF No. 16-2), and the Court may interpret it as a matter of law.

---

[8] Plaintiff argues that *Wilson* is distinguishable because there, the insured's Complaint did not mention a virus exclusion.  (*See* ECF No. 17 at 28-29.)  That distinction is irrelevant.  In *Wilson*, as should be done here, the court interpreted the virus exclusion as a matter of law.  Legal conclusions regarding the enforceability of the Virus Exclusion do not--and cannot--alter that analysis.  *See Iqbal*, 556 U.S. at 678 (legal conclusions not to be considered on motion to dismiss).  And, as discussed further below, the factual allegations in the Amended Complaint, even if true, do not impact the enforceability of the Virus Exclusion.

### 2.      The Virus Exclusion Bars Recovery for "Expenses."

Next, Plaintiff argues the Virus Exclusion only bars coverage for "loss or damage," but does not bar coverage for "expenses" contemplated by the Business Income, Extra Expense, and Civil Authority Coverages.  (*See* ECF No. 17 at 30-34 (discussing "expenses" purportedly covered under those three provisions).)   Plaintiff, however, misreads the exclusion and the Policy. Notwithstanding the type of injury covered by the Business Income, Extra Expense, and Civil Authority Coverages (e.g., lost revenue, operating expenses, repair costs, etc.), all three coverages require Plaintiff to establish physical "loss or damage."[9]  Plaintiff is therefore not entitled to *any* "expenses" under *any* coverage unless it has suffered "loss or damage."   Moreover, the Virus Exclusion excludes coverage for any such loss or damage "caused directly or indirectly by . . . . any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (ECF No. 16-2 at DEF_00000090, DEF_00000093.)  It thus excludes coverage for all expenses (as well as lost revenue, repair costs, and other types of loss) attributable to "loss or damage" caused by a virus.  Thus, even if Plaintiff's loss were otherwise covered under the Business Income, Extra Expense, or Civil Authority Coverage, it would be excluded by the Virus Exclusion.

### 3.      Allstate Is Not Estopped from Enforcing the Virus Exclusion.

Next, Plaintiff claims Allstate should be estopped from enforcing the Virus Exclusion because of statements ISO and AAIS made to state regulators.  (*See* ECF No. 17 at 37.)  Plaintiff, however, has failed to establish that Allstate's litigation position in this case contradicts the position ISO and AAIS took before regulators.  *See Simon Wrecking Co., Inc.*, 530 F. Supp. 2d

---

[9] As discussed above, Plaintiff cannot do so here.

706, 714 (E.D. Pa. 2008) (regulatory estoppel requires showing that "party took a position *opposite* to the one presented to the regulatory agency." (emphasis added).)

Here, Allstate argues that Plaintiff's alleged loss is not covered by plain language in the Business Income, Extra Expense, and Civil Authority Coverages.  *See supra*, 12.  The Virus Exclusion merely clarifies that no coverage exists.  *See supra*, 11.  That is *exactly* the position Plaintiff alleges ISO and AAIS took before regulators.  (*See* ECF No. 17 at 37 (alleging ISO represented that, even in absence of virus exclusion, property insurance policies did not, and were not intended to cover losses caused by viruses).)  It is certainly not "opposite to" Allstate's position here.  *Simon Wrecking Co., Inc*., 530 F. Supp. 2d at 717 (citing *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 494, (2001)); *Takeda Pharm. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 207 (E.D. Pa. 2019) (requiring change of position to establish regulatory estoppel).

Finally, Plaintiff is not entitled to discovery in an attempt to establish a claim for regulatory estoppel.  The Virus Exclusion, like the entire Policy, must be interpreted as a matter of law on a motion under Rule 12(b)(6).  *See Transamerican Office Furniture*, 222 F. Supp. 2d at 691 ("Since insurance policies are considered contracts and contract interpretation is generally a question of law, we apply ordinary principles of contract law.").  Plaintiff cannot block the Court from doing so merely by arguing that unpled, unknown, and hypothetical facts *might possibly* establish its regulatory estoppel claim.  *See Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (recitation of legal conclusions, or facts that establish mere possibility of recovery will not withstand motion to dismiss, plaintiff must instead plead *facts* establishing that claim is "plausible on its face").  If it were otherwise, any litigant could prevent the court from interpreting a contract under Rule 12(b)(6)--and thereby nullify the Rule entirely--simply by arguing that it is entitled to discovery to develop a legal theory that *might* make the contract--or

some provision therein-- unenforceable.  That is not the law.  *Id.*

## III.   CONCLUSION

For all the reasons set forth above, the Amended Complaint should be dismissed in its

entirety.

Respectfully submitted,

*/s/ Douglas Y. Christian*
Douglas Y. Christian (PA Id. No. 41934)
Terrence M. Grugan (PA Id. No. 307211)
Clifford Sacalis (PA Id. No. 313765)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
T: 215-665-8500
F: 215-864-8999
christiand@ballardspahr.com
grugant@ballardspahr.com
sacaliss@ballardspahr.com

Richard L. Fenton (admitted *pro hac vice*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone:  312.876.8000
Facsimile:  312.876.7934
richard.fenton@dentons.com

Jeffrey A. Zachman (admitted *pro hac vice*)
Dentons US LLP
303 Peachtree St., NE Suite 5300
Atlanta, GA  30308
Telephone:  404.527.4000
Facsimile:  404.527.4198
jeffrey.zachman@dentons.com

*Attorneys for Defendant Allstate Insurance Co.*

Dated:  October 9, 2020

<u>**CERTIFICATE OF SERVICE**</u>

I, Douglas Y. Christian, certify that on this 9th day of October, 2020, the foregoing Reply in Support of Defendant's Motion to Dismiss was served on all parties through their counsel of record *via the Court's CM/ECF system*.


/s/ Douglas Y. Christian
Douglas Y. Christian