```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| BRIAN HANDEL D.M.D., P.C. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE CO. | : | NO. 20-3198 |

MEMORANDUM

Bartle, J.                                           November 6th, 2020

Plaintiff Brian Handel D.M.D., P.C. has sued defendant Allstate Insurance Co. in this diversity action for a declaratory judgment and for breach of contract. These counts arise from defendant's denial of coverage for claims of plaintiff for business income loss and extra expenses due to the interruption of plaintiff's dental practice during the COVID-19 pandemic.

Before the court is the motion of defendant to dismiss plaintiff's first amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233

(3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II.

For present purposes, the court accepts as true the following well-pleaded facts set forth in the amended complaint. Plaintiff, a professional corporation, is a dental practice in Wayne, Pennsylvania.  Plaintiff has an "all-risk" insurance

-2-

policy with defendant, dated September 9, 2019, for non-excluded business losses.

On March 19, 2020, the Governor of Pennsylvania prohibited business operations that are not life sustaining so as to prevent the spread of COVID-19, a highly contagious respiratory virus that has infected more than 8 million people in the United States and killed more than 225,000.  According to the complaint, COVID-19 is known to be transmitted by aerosols which can linger in the air for up to three hours and on surfaces for up to three days.

On March 23, 2020, the Governor issued a stay-at-home order for residents of various counties in Pennsylvania, including Chester County, where plaintiff is located.  This order required residents in seven counties to stay at home "except as needed to access, support, or provide life sustaining business, emergency, or government services."  On April 1, 2020, the Governor extended the stay-at-home order to all counties in the Commonwealth.

Pursuant to the Governor's orders and a March 26, 2020 guidance from the state Department of Health, plaintiff was forced to close its office for all non-emergency dental services.  Plaintiff subsequently made a claim for business income loss and/or extra expense coverage with defendant under the terms of the policy.

The policy at issue provides that defendant will pay for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." A Covered Cause of Loss is defined as "[d]irect physical loss unless the loss is excluded or limited under Section I – Property."

This coverage includes business income loss sustained "due to the necessary suspension of your 'operations' during the 'period of restoration'" if the suspension was "caused by direct physical loss of or damage to property at the described premises" and was caused by a Covered Cause of Loss. "Operations" refers to "business activities occurring at the described premises." The "period of restoration" begins either immediately after the direct physical loss or damage or seventy-two hours after the loss or damage and ends when the property is repaired or replaced or when business resumes at a new location.

The policy also covers "necessary Extra Expense" incurred during the "'period of restoration' that [the insured] would not have incurred if there had been no direct physical loss or damage to property at the described premises" if the loss or damage are "caused by or result from a Covered Cause of Loss."

The policy includes a provision to cover the loss of business income and necessary extra expenses when a Covered

-4-

Cause of Loss damages property other than the described premises and actions of a civil authority prohibit access to the described premises.  This "Civil Authority" provision requires that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage," and "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."

Encompassed within the property coverage section of the policy are exclusions from coverage.  One such exclusion is for "loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

On May 28, 2020, defendant denied plaintiff's claim for coverage because it claimed that "there is no damage to the premises by a covered cause of loss that caused your business to lose income."

III.

The initial burden in insurance coverage disputes is on the insured to show that the claim falls within the policy, but if the insured is able to make this showing the insurer has the burden to demonstrate that there is an applicable policy exclusion which denies coverage.  State Farm Fire & Cas. Co. v.

Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009).  If the language is ambiguous in that it is open to more than one interpretation, the court must construe the language in favor of the insured.  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999).  A contract provision is not ambiguous simply because the parties do not agree on the construction of the provision.  Weisman v. Green Tree Ins. Co., 670 A.2d 160, 161 (Pa. Super. 1996).

Plaintiff avers in its amended complaint that COVID-19: caused "direct physical damage, as well as indirect non-physical damage;" rendered the property "unsafe, uninhabitable, or otherwise unfit for its intended use;" and restricted the use of the property resulting in "direct physical loss."  Plaintiff also claims that the "Covid-19 Effect," or the public's social anxiety about public health and the safety of indoor spaces, "is the functional equivalent of damage of a material nature or an alteration in physical composition."

Defendant counters that plaintiff fails to plead any facts describing any property alteration or damage that would constitute physical loss or damage and that the mere risk of contamination is not enough to constitute property damage. Defendant also argues that at most the property would need sanitizing.

Our Court of Appeals has ruled that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure," such as from fire, water, or smoke, that "may demonstrably alter the components of a building and trigger coverage." Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 2002). The burden is on the plaintiff to establish that its structure was physically damaged. Id. at 232.

Allegations of physical damage to a building from "sources unnoticeable to the naked eye must meet a higher threshold." Id. at 235. In Port Authority of New York and New Jersey v. Affiliated FM Insurance Co., the Court determined that asbestos causes physical damage if it is present in such large quantities that it makes the structure "uninhabitable and unusable," but if the building continues to function and remain usable then the building owner has not suffered a loss. Id. at 236. The court concluded that the "mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage." Id.

In a subsequent insurance coverage case involving contamination of a homeowner's well from e-coli bacteria, the Court of Appeals found its reasoning in Port Authority to be

applicable under Pennsylvania law and "instructive in a case where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree." Motorists Mut. Ins. Co. v. Hardinger, 131 F. App'x 823, 826 (3d Cir. 2005). In those circumstances "direct physical loss of or damage to" the property means that the functionality of the property "was nearly eliminated or destroyed" or the "property was made useless or uninhabitable." Id. at 826-27. This definition applies equally to the situation here involving the COVID-19 virus.

Plaintiff alleges generally in the amended complaint that it was "forced to suspend or reduce business operations following an order from Pennsylvania Governor Wolf." (emphasis added). In its brief in opposition to defendant's motion to dismiss, plaintiff clarifies that the effect of the orders of the Governor and Department of Health only "denied access to Plaintiff's premises for all non-emergent procedures" and that its business "has suffered reduced operations and loss of income." In fact, no order by either the Governor or the Department of Health ever required dental offices such as plaintiff to close completely. Instead, plaintiff was able to remain open for emergency procedures.

Thus, plaintiff's property remained inhabitable and usable, albeit in limited ways. Plaintiff has failed to plead

-8-

plausible facts that COVID-19 caused damage or loss in any physical way to the property so as to trigger coverage as set forth in Hardinger.  See 131 F. App'x at 826-27.

IV.

Plaintiff's claim for coverage pursuant to the civil authority provision of the policy also fails.  That provision obliges defendant to cover the loss of business income and necessary extra expenses when a Covered Cause of Loss damages property in the immediate area and a civil authority prohibits access to the covered property.  The policy requires that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" and that "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage."

As previously stated, to constitute a Covered Cause of Loss there must be direct physical loss.  In addition, the Governor's orders limit, rather than prohibit, access to the property.  Absent facts of direct physical loss or prohibited access to the property, plaintiff cannot sustain a claim for coverage under the civil authority provision of this policy.

V.

Even if plaintiff had pleaded sufficient facts for physical damage or loss as a result of COVID-19, plaintiff's claims are still excluded by the virus exclusion provision. Courts have routinely granted motions to dismiss when an exclusion provision in an insurance policy applies to the action. See Brewer v. U.S. Fire Ins. Co., 446 F. App'x 506, 510 (3d Cir. 2011); Wilson v. Hartford Cas. Co., Civil Action No. 20-3384, 2020 WL 5820800, at *7 (E.D. Pa. Sept. 30, 2020).

The policy at issue unambiguously states that defendant will not cover loss or damage if caused, either directly or indirectly, by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." There is no other way to characterize COVID-19 than as a virus which causes physical illness and distress. Therefore, the virus exclusion unambiguously bars coverage for plaintiff's claims due to COVID-19.

Plaintiff argues that the exclusion only states that defendant will not pay for "loss or damage" but does not say anything about paying for expenses and that plaintiff can still recover for extra expenses. In order to recover extra expenses, however, plaintiff would still need to plead sufficient facts of

direct physical loss or damage caused by a Covered Cause of Loss. As stated above, plaintiff has not done so.

VI.

Plaintiff asserts that the doctrine of regulatory estoppel prevents defendant from raising the virus exclusion to deny coverage. Regulatory estoppel "prohibits parties from switching legal positions to suit their own ends." Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189, 1192 (Pa. 2001). If an insurer represents to a regulatory agency that new language in a policy will not result in decreased coverage, the insurer cannot assert the opposite position when insureds raise the issue in litigation. Id. at 1192-93.

To support a claim for regulatory estoppel, a plaintiff must plead two elements: "(1) A party made a statement to a regulatory agency; and (2) Afterward, the party took a position opposite to the one presented to the regulatory agency." Simon Wrecking Co. v. AIU Ins. Co., 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008). The representations the insurer made to the regulatory agency must be contrary to the insurer's position in the current litigation for regulatory estoppel to apply. Hussey Copper, LTD v. Arrowood Indem. Co., 391 F. App'x 207, 211 (3d Cir. 2010).

Plaintiff satisfies the first element of regulatory estoppel since it avers that the Insurance Services Office, Inc.

("ISO") and the American Association of Insurance Services ("AAIS") presented to state regulatory agencies in 2006 on behalf of multiple insurers, including defendant, to include a virus exclusion in insurance policies.  However, plaintiff fails to plead any facts to satisfy the second element that defendant currently takes a position contrary to the statements made before the regulatory agencies on behalf of the insurers.

Plaintiff cites to the statements of the ISO and the AAIS in which both organizations made clear that property policies have not been and were not intended to be a source of recovery for damage from disease-causing agents such as a virus. The statement of AAIS to which plaintiff cites explicitly states that "[t]his endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus . . . is excluded."

Defendant takes the same position here as the ISO and AAIS did by arguing that the virus exclusion eliminates coverage for any damage or loss as a result of the causes enumerated therein.  Since defendant does not take a contradictory position to the one made to regulatory agencies, the doctrine of regulatory estoppel does not apply to this action.